112 Cal.Rptr.2d 677 (2001)
93 Cal.App.4th 37
TRADERS SPORTS, INC. et al., Plaintiffs and Appellants,
v.
CITY OF SAN LEANDRO, Defendant and Respondent.
No. A092448.
Court of Appeal, First District, Division Two.
October 24, 2001.
Review Denied January 16, 2002.
*679 James Leonard Crew, San Ramon, Jack Leavitt, Counsel for Appellants.
Meyers, Nave, Riback, Silver & Wilson, Andrea J. Saltzman, Benjamin P. Fay, San Leandro, Liane M. Randolph, City Attorney, Counsel for Respondents.
Certified for Partial Publication.[*]
*678 RUVOLO, J.

I.

Introduction
Traders Sports, Inc. and several individuals [1] (collectively, Traders) brought this action against the City of San Leandro (San Leandro) challenging a three-percent *680 gross receipts tax imposed by the voters of San Leandro on businesses, such as Traders, that sell concealable firearms and ammunition for concealable firearms. Traders principally alleged that the method for submitting the tax to the voters for their approval violated the procedure set out by Government Code section 53724, subdivision (b), (hereafter section 53724), which is part of Proposition 62, a statutory initiative adopted by the voters of California in 1986. Section 53724 prohibits an ordinance proposing such a tax from being put before the voters unless it has been "approved by a two-thirds vote of all members of the legislative body of the local government or district." Despite section 53724, the San Leandro City Council (City Council) approved placing the tax on the ballot by a simple majority, rather than a two-thirds vote of its members.
This appeal challenges the sustaining of San Leandro's demurrer to Traders' complaint without leave to amend. In conducting our review, this court is required to explore the limits of the power of a home rule charter city, such as San Leandro, to follow charter provisions and ordinances that are in conflict with state statutes. We conclude that, as a charter city, section 53724 cannot override San Leandro's core constitutional authority over the conduct of its local elections. (See Cal. Const., art. XI, § 5, subd. (a).) Accordingly, we affirm the trial court's judgment in favor of San Leandro because the two-thirds vote requirement of section 53724 is superseded by San Leandro's charter and municipal code, which allows a tax measure to be placed on the ballot by a simple majority vote of the City Council.

II.

Facts and Procedural History
In reciting the facts, we are guided by well-settled principles governing appellate review after the sustaining of a demurrer without leave to amend. "`We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.]" (Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58; see also Tensor Group v. City of Glendale (1993) 14 Cal.App.4th 154, 159, 17 Cal. Rptr.2d 639.) In accordance with these principles, we set out the following facts derived from the allegations of Traders' complaint and attached documents, which we judicially notice.
On March 2, 1998, by a four-to-three (4 to 3) majority vote, the City Council adopted "Resolution 98-27," which is at the center of this controversy. The resolution called for a special municipal election at which the voters of San Leandro would be asked to vote "Yes" or "No" on the following measure:
"Shall the ordinance providing for a 3 [percent] business license fee levied on firearms' dealers based on the sale of concealable firearms and ammunition be adopted?" This special election was consolidated with the general municipal election that was scheduled for June 2, 1998.
At the June 2,1998 general election, this measure, known as Measure H, received a majority of the vote and was passed. Measure H has been codified into the San Leandro Municipal Code as part of section 2-2-500. Measure H levies a business license tax on merchants within San Leandro measured at three percent of their gross sales attributable to the sale of firearms capable of being concealed upon the person and ammunition for such firearms, with the exception of sales to public agencies.
*681 On July 16, 1998, Traders filed its original complaint against City. The complaint alleged that Measure H was a "an impermissible, confiscatory sanction on [appellants'] personal and property rights...." Among the various theories of recovery asserted was denial of equal protection of the laws, use of suspect classifications, racial animosity, imposition of improper burdens on the enjoyment of constitutionally guaranteed rights, and lack of a reasonable relationship between the fee imposed by Measure H and the services provided.
We are most concerned with the cause of action in Traders' complaint alleging that the San Leandro ordinance was invalid because the method by which the City Council placed it before the voters conflicted with state law. The complaint pointed out that Resolution 98-27, which placed Measure H on the ballot, passed by a fourto-three vote of the City Council. The complaint alleged that Measure H was "invalid and void" because it was placed on the ballot by an inadequate vote, citing section 53724. As already noted, section 53724 was enacted as part of Proposition 62, a statewide initiative. The intent of the initiative was to give the local electorate a greater degree of control over the exercise of local taxing power with the obvious goal of reducing the tax burden. (City of Westminster v. County of Orange (1988) 204 Cal.App.3d 623, 626, 635-638, 251 Cal.Rptr. 511; see generally Santa Clara County Local Transportation Authority v. Guardino (1995) 11 Cal.4th 220, 272-273, 45 Cal.Rptr.2d 207, 902 P.2d 225 [full text of Proposition 62 reprinted as appendix to opinion].) Section 53724 provides that:
"No tax subject to the vote requirement prescribed by Section 53723 [a category which includes Measure H] shall be presented at an election unless the ordinance or resolution proposing such tax is approved by a two-thirds vote of all members of the legislative body of the local government or district."
On December 3, 1999, San Leandro filed a motion for judgment on the pleadings arguing that Traders had failed to allege facts sufficient to constitute a cause of action under any theory. On April 3, 2000, the court entered an order granting San Leandro's motion for judgment on the pleadings, but giving Traders leave to amend. On April 10, 2000, Traders filed an amended complaint that was essentially identical to its original complaint. After the trial court sustained San Leandro's demurrer to Traders' amended complaint without leave to amend, judgment for San Leandro was entered. This appeal followed.

III.

Discussion

A. Standard of ReviewDemurrer

San Leandro argues that when a judgment is entered after a demurrer is sustained, the standard of review is abuse of discretion. This is only partially correct. "A demurrer tests the legal sufficiency of the complaint...." (Hernandez v. City of Pomona (1996) 49 Cal.App.4th 1492, 1497, 57 Cal.Rptr.2d 406; Sargoy v. Resolution Trust Corp. (1992) 8 Cal.App.4th 1039, 1041, 10 Cal.Rptr.2d 889.) On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. (Moore v. Regents of University of California (1990) 51 Cal.3d 120, 125, 271 Cal.Rptr. 146, 793 P.2d 479, cert. den. 499 U.S. 936, 111 S.Ct. 1388, 113 L.Ed.2d 444; Desai v. Farmers Ins. Exchange (1996) 47 Cal. App.4th 1110, 1115, 55 Cal.Rptr.2d 276.) We give the complaint a reasonable interpretation, *682 reading it as a whole and viewing its parts in context. (Blank v. Kirwan, supra, 39 Cal.3d at p. 318, 216 Cal.Rptr. 718, 703 P.2d 58; see Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 966-967, 9 Cal.Rptr.2d 92, 831 P.2d 317.) We deem to be true all material facts properly pled. (Serrano v. Priest (1971) 5 Cal.3d 584, 591, 96 Cal.Rptr. 601, 487 P.2d 1241, cert. den. 432 U.S. 907, 97 S.Ct. 2951, 53 L.Ed.2d 1079.) We must also accept as true those facts that may be implied or inferred from those expressly alleged. (Marshall v. Gibson, Dunn & Crutcher (1995) 37 Cal.App.4th 1397, 1403, 44 Cal. Rptr.2d 339.) If no liability exists as a matter of law, we must affirm that part of the judgment sustaining the demurrer. (See Baughman v. State of California (1995) 38 Cal.App.4th 182, 187, 45 Cal. Rptr.2d 82.)
While the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review on appeal, the granting of leave to amend involves an exercise of the trial court's discretion. (Hernandez v. City of Pomona, supra, 49 Cal.App.4th at p. 1497, 57 Cal.Rptr .2d 406; see Moore v. Regents of University of California, supra, 51 Cal.3d at p. 125, 271 Cal.Rptr. 146, 793 P.2d 479; Desai v. Farmers Ins. Exchange, supra, 47 Cal. App.4th at p. 1115, 55 Cal.Rptr .2d 276.) When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment. (Hendy v. Losse (1991) 54 Cal.3d 723, 742, 1 Cal.Rptr.2d 543, 819 P.2d 1; Blank v. Kirwan, supra, 39 Cal.3d at p. 318, 216 Cal.Rptr. 718, 703 P.2d 58; Baughman v. State of California, supra, 38 Cal.App.4th at p. 187, 45 Cal.Rptr.2d 82.) A trial court abuses its discretion if it sustains a demurrer without leave to amend when the plaintiff shows a reasonable possibility to cure any defect by amendment. (Aubry v. Tri-City Hospital Dist, supra, 2 Cal.4th at p. 967, 9 Cal. Rptr.2d 92, 831 P.2d 317; see Code Civ. Proc, § 472c.) If the plaintiff cannot show an abuse of discretion, the trial court's order sustaining the demurrer without leave to amend must be affirmed. (Hernandez v. City of Pomona, supra, 49 Cal.App.4th at p. 1498, 57 Cal.Rptr.2d 406.)

B. Theories of Relief

In the course of San Leandro's motion for judgment on the pleadings, the parties stipulated that Traders would be limited to three specific causes of action for relief in its challenge to the tax imposed by Measure H. These are that:
1) Measure H is invalid because it was placed on the ballot by only a 4 to 3 vote of San Leandro's City Council in apparent contradiction to section 53724;
2) The tax imposed by Measure H is invalid because it is actually a fee that is not proportional to any service provided in return for the payment of the fee; and
3) The tax imposed by Measure H violates the right to equal protection of the laws as guaranteed by the United States Constitution. Traders specifically relinquished any other causes of action, counts, or theories of relief.

C. Inconsistency with Section 53724

Traders claims that the City Council violated section 53724 because it placed Measure H on the ballot with only a majority vote, instead of the two-thirds vote required by that statute. While at first *683 glance this argument appears unassailable, San Leandro contends there was no violation of section 53724 because neither section 53724, nor Proposition 62 of which it is a part, applies to a charter city like San Leandro.
As a charter city recognized in the California Constitution (Cal. Const., art. XI, §§ 2, 3), San Leandro is empowered to govern its own "municipal affairs." In this regard, article XI, section 5, subdivision (a), provides in relevant part: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." Accordingly, this constitutional "home rule" doctrine reserves to charter cities the right to adopt and enforce ordinances that conflict with general state laws, provided the subject of the regulation is a "municipal affair" rather than one of "statewide concern." (Johnson v. Bradley (1992) 4 Cal.4th 389, 399, 14 Cal.Rptr.2d 470, 841 P.2d 990 (Johnson).)
San Leandro urges a resolution of this controversy in favor of the exercise of its "home rule" power over its municipal affairs. (Johnson, supra, 4 Cal.4th at p. 399, 14 Cal.Rptr.2d 470, 841 P.2d 990.) San Leandro points out that both its charter and municipal code provide that a majority vote of the City Council is sufficient to put a measure on the ballot. (Charter of the City of San Leandro, §§ 330, subd. (a); 615; San Leandro Mun.Code, § 1-1-305; Elec.Code, § 9222.) San Leandro claims this procedure takes precedence over the procedure specified in section 53724 because it implicates a matter that is a municipal affair as mandated by the California Constitution, which explicitly grants charter cities the power to regulate the conduct of their own municipal elections. (See Cal. Const., art. XI, § 5, subd. (a).) An acceptance of San Leandro's argument would lead to the conclusion that its charter and municipal code supersede the two-thirds voting requirement of section 53724.
On the other hand, Traders argues that when section 53724 was enacted as part of Proposition 62, a statewide voter-approved initiative, the voters were acting in an area of statewide concern and section 53724's procedural requirements take precedence over San Leandro's charter and municipal code. Traders relies principally on section 53720, subdivision (a), to support its argument that the drafters of Proposition 62 intended that section 53724 would apply to all municipalities, including those with home rule charters. Section 53720, subdivision (a) defines "local governments" for purposes of implementing Proposition 62's provisions as including "any county, city, city and county, including a chartered city or county ...." (Italics added.) Traders argued below: "The undiluted plain meaning of the tax relief enactment [Proposition 62] is that local governments must follow rigorous procedures before burdening their constituents with tax measures. In defiance of these rules, San Leandro placed Measure H on the local ballot with an inadequate City Council vote, a simple majority rather than the required two-thirds majority. Accordingly, the City Council action was improper, the vote on Measure H was improper; and the election results wereand are improper. Measure H is invalid." Our resolution of these competing arguments implicates questions of law, not of fact. (Northern Cal. Psychiatric Society v. City of Berkeley (1986) 178 Cal.App.3d 90, 100, 223 Cal.Rptr. 609.)
A well-developed body of case law has identified the steps we must *684 take in resolving this controversy. "First, a court must determine whether there is a genuine conflict between a state statute and a municipal ordinance. [Citations.] Only after concluding there is an actual conflict should a court proceed with the second question; i.e., does the local legislation impact a municipal or statewide concern?" (Barajas v. City of Anaheim (1993) 15 Cal.App.4th 1808, 1813, 19 Cal. Rptr.2d 764; see also Associated Builders & Contractors, Inc. v. San Francisco Airports Com. (1999) 21 Cal.4th 352, 364, 87 Cal.Rptr.2d 654, 981 P.2d 499; Rider v. City of San Diego (1998) 18 Cal.4th 1035, 1054, 77 Cal.Rptr.2d 189, 959 P.2d 347.) Finally, if a genuine conflict is presented and the state statute qualifies as a matter of statewide concern, "we next consider whether it is both (i) reasonably related to the resolution of that concern, and (ii) `narrowly tailored' to limit incursion into legitimate municipal interests." (Johnson, supra, 4 Cal.4th at pp. 404, 406, fn. 17, 14 Cal.Rptr.2d 470, 841 P.2d 990.)
Plainly, San Leandro's municipal legislation requiring only a majority vote of the City Council to put Measure H on the ballot is in direct conflict with the two-thirds requirement imposed by section 53724. The next step, then, is to determine whether the procedure for putting a municipal tax measure on the ballot is more properly characterized as a municipal affair or statewide concern.
As we have noted, under California's Constitution, charter cities have been specifically granted the power to manage certain of their own affairs without interference from the state Legislature. (Cal. Const., art. XI, § 5, subd. (a).) In particular, subdivision (b) of this constitutional provision directly grants to charter cities the power and authority to legislate in four "core" areas "that are by definition, `municipal affairs.'" (Johnson, supra, 4 Cal.4th at p. 398, 14 Cal.Rptr.2d 470, 841 P.2d 990.) When a charter city's enactment falls within one of these core areas, it supersedes any conflicting state statute. (See, e.g., Ector v. City of Torrance (1973) 10 Cal.3d 129, 132-133, 109 Cal.Rptr. 849, 514 P.2d 433.) Our Constitution is most explicit. The "conduct of city elections" is one of the few specifically enumerated core areas of autonomy for home rule cities. (Cal. Const., art. XI, § 5, subd. (b).)[2] A statute purporting to define the number of votes required for putting a local tax measure on the ballot contravenes this explicit constitutional grant of authority to charter cities, such as San Leandro, over the conduct of its municipal elections.
Even if the procedure for putting a local measure on the ballot is not a "core" area of municipal concern under the California Constitution, it lies squarely within four areas that have long been considered municipal affairs: (1) the procedures for conducting municipal elections (Rees v. Layton (1970) 6 Cal.App.3d 815, 820, 86 Cal. Rptr. 268; Mackey v. Thiel (1968) 262 *685 Cal.App.2d 362, 365, 68 Cal.Rptr. 717 ["`election procedures' in a chartered city are municipal affairs"]); (2) the procedures for enacting municipal ordinances (Adler v. City Council (1960) 184 Cal. App.2d 763, 768, fn. 1, 7 Cal.Rptr. 805 ["mode and manner of passing ordinances is a municipal affair"]); (3) the levy of municipal taxes (City of San Bernardino Hotel/Motel Assn. v. City of San Bernardino (1997) 59 Cal.App.4th 237, 242, 69 Cal.Rptr .2d 97 ["levy of taxes for city purposes is generally a municipal affair"]); and (4) the local exercise of the initiative power (hawing v. Faull (1964) 227 Cal. App.2d 23, 29, 38 Cal.Rptr. 417 [charter city's requirements for putting a referendum on the ballot prevailed over state requirements because exercise of powers of initiative and referendum were municipal affairs]).
We believe that under the holdings of the above-described cases, the present subjectthe number of votes required to put a local tax measure on the ballotis precisely the sort of matter to fall within the decisionmaking power of a home rule municipality. It is a subject that is predominantly, if not entirely, of interest to the citizens of San Leandro. After all, who else can best determine the proper balance between the powers delegated to the elected representatives of San Leandro to propose a local tax measure, and the powers reserved to the residents of San Leandro to enact such a tax measure? Certainly, it is the people of San Leandro, who are familiar with local conditions, who are best able to regulate such matters by means of charter provisions and municipal codes.
Our final task is to compare the scope of the statute to the statewide concerns sought to be addressed. Our Supreme Court in California Federal Savings & Loan Association v. City of Los Angeles (1991) 54 Cal.3d 1, 283 Cal.Rptr. 569, 812 P.2d 916 (CalFed), summarized this step as ensuring that "`the sweep of the state's protective measures may be no broader than its interest.' [Citation.]" (Id. at p. 25, 283 Cal.Rptr. 569, 812 P.2d 916.) Section 53724 was adopted as part of Proposition 62. "The manifest purpose of Proposition 62 as a whole was to increase the control of the citizenry over local taxation by requiring voter approval of all new local taxes imposed by all local governmental entities...." (Santa Clara County Local Transportation Authority v. Guardino, supra, 11 Cal.4th at p. 235, 45 Cal.Rptr.2d 207, 902 P.2d 225.) Assuming arguendo that the desire to increase voters' control of local taxation can qualify as a statewide concern, we emphasize that the voters in San Leandro were given the right to vote on the tax increase on firearms' dealers proposed by their local government. Section 53724's two-thirds vote requirement merely implicates a procedural step in the local legislative process before the tax is submitted to the voters. As a result, the application of the two-thirds requirement is not narrowly calculated to address the purpose of this statutory initiative voter control over the imposition of new taxeswhile at the same time it invades the right of a charter city to conduct local electionsan area that is historically a municipal affair.
It is true, as Traders emphasizes, that the drafters of Proposition 62 made the provisions of this statewide initiative facially applicable to charter cities. (§ 53720, subd. (a).) Nevertheless, our Supreme Court has made it abundantly clear that even if a statute purports to apply to all municipalities throughout the state, including charter cities, it is not necessarily a general law if it does not relate to a matter of statewide concern. (CalFed, supra, 54 Cal.3d at p. 24, fn. 21, *686 283 Cal.Rptr. 569, 812 P.2d 916; Johnson, supra, 4 Cal.4th at p. 405, 14 Cal.Rptr.2d 470, 841 P.2d 990.) This point is aptly illustrated by a pair of cases interpreting Proposition 62 and its application to charter cities. (Fielder v. City of Los Angeles (1993) 14 Cal.App.4th 137, 17 Cal.Rptr.2d 630 (Fielder); Fisher v. County of Alameda (1993) 20 Cal.App.4th 120, 24 Cal. Rptr.2d 384 (Fisher).) Both cases upheld real estate transfer taxes imposed by charter cities, even though such taxes were explicitly prohibited by section 53725, subdivision (a), a provision of Proposition 62. Both courts reasoned that the subject of statute was not of statewide concern and thus, the conflicting tax was properly assessed as part of the charter cities' sovereign power over their municipal affairs. (Fisher, supra, 20 Cal.App.4th at pp. 130-131, 24 Cal.Rptr.2d 384; Fielder, supra, 14 Cal.App.4th at p. 145, 17 Cal.Rptr.2d 630.)
We further note that although the drafters of Proposition 62 expressed an intent that charter cities would be bound by its provisions, the ballot analyses for Proposition 62 clearly informed the voters, without contradiction, that its provisions could not constitutionally be applied to charter cities. For example, the "Analysis by the Legislative Analyst" stated that, "[b]ecause this measure is not a constitutional amendment ... this measure does not change the constitutional authority of charter cities to impose new or higher general taxes by a majority vote of the city council." (City of Westminster v. County of Orange, supra, 204 Cal.App.3d at p. 635, 251 Cal.Rptr. 511, italics added.) The "Rebuttal to Argument in Favor of Proposition 62" reiterated that Proposition 62 would not apply to charter cities because it was not a constitutional amendment, and even listed 24 cities by name to which it was stated Proposition 62 would not apply because they were charter cities. (Id. at p. 637, 251 Cal.Rptr. 511.)[3] We are entitled to presume that these ballot materials reflect the voters' intent in enacting Proposition 62. (Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 246-247, 149 Cal.Rptr. 239, 583 P.2d 1281 [the intent of the voters is discerned from the ballot materials]; Kidd v. State of California (1998) 62 Cal.App.4th 386, 407, fn. 7, 72 Cal.Rptr .2d 758.)
For all of these reasons, we hold that section 53724, insofar as it requires a two-thirds vote of the governing body before a tax measure can be put on the ballot, cannot override the inconsistent provisions of the San Leandro Charter and Municipal Code. We find that the purpose of the home rule authority granted by our Constitutionto delegate to municipalities autonomy in matters concerning their local community, as opposed to matters of statewide concernwould be frustrated by applying section 53724 to a charter city such *687 as San Leandro, because the subject of the legislation is clearly a matter of local concern. Consequently, San Leandro is constitutionally empowered to require a voting majority different from that set out in section 53724.

D.-E.[**]

Disposition
The judgment is affirmed.
We concur: HAERLE, Acting P.J. and LAMBDEN, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III. D and III E.
[1] Traders Sports, Inc. is a sporting goods store located in the City of San Leandro, which sells, among other things, concealable firearms and ammunition for concealable firearms. It is self-described in its complaint as "one of the largest such stores in Northern California . . . regularly attracting customers from all over California and from other states." Appellant Anthony Cucchiara is the president of Traders Sports, Inc. and a San Leandro resident. Appellants Raymond Randle and Bud Pyle are customers of Traders Sports, Inc.
[2] Article XI, section 5, subdivision (b), provides: "It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) the constitution, regulation, and government of the city police force (2) subgovernment in all or part of a city (3) conduct of city elections and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees." (Italics added.)
[3] As was pointed out at oral argument in this matter, in November 1996, California voters passed an initiative measure entitled the "Right to Vote on Taxes Act," or "Proposition 218." In contrast to Proposition 62, this initiative measure created a constitutional amendment intended to limit the authority of local governments to impose taxes, assessments, fees and charges. As explained in McBrearty v. City of Brawley (1997) 59 Cal. App.4th 1441, 69 Cal.Rptr.2d 862, the drafters of Proposition 218 "felt that a constitutional amendment was necessary to ensure that voter approval requirements would apply to charter cities as well as other local taxing authorities. [Citations.]" (Id. at p. 1449, fn. 5, 69 Cal.Rptr.2d 862, citing the "ballot history" of Proposition 218.) While passage of Proposition 218 and the resulting enactment of a constitutional amendment significantly limited local agencies' assessment levying powers, nothing in Proposition 218 requires a two-thirds vote of a local legislative body to place a general or a special tax on the ballot for voter approval.
[**] See footnote *, ante.