[No. A109101. First Dist., Div. Five. Oct. 25, 2005.]

PAUL COBB et al., Plaintiffs and Appellants, v.
JACK O'CONNELL, as Superintendent of Public Instruction, etc.,
Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.4.

COUNSEL

Siegel & Yee and Dan Siegel for Plaintiffs and Appellants.

Marsha A. Bedwell, Michael E. Hersher and Amy Bisson Holloway for Defendant and Respondent.

OPINION

**STEVENS, J.**—Appellants are Oakland residents and taxpayers, who contend that the California Legislature's passage of special remedial legislation in 2003, which was designed to save the Oakland schools from financial insolvency, violated the "home rule" provisions of the California Constitution and the Oakland City Charter. We affirm the trial court's ruling, which rejected appellants' contentions. In the published portions of this opinion, we address appellants' claims of a conflict with provisions of the California Constitution and the Oakland City Charter. In the final, unpublished portion of this opinion, we address appellants' claims of a waste of public funds.

## I. FACTS AND PROCEDURAL HISTORY

We draw the relevant facts from appellants' first amended complaint. During the summer of 2002, the Oakland Unified School District discovered that it had incurred a deficit of $31 million, due to errors in estimating expenses, failures

of oversight, an outdated computer system, and other locally occurring problems. The Oakland schools also faced a projected deficit for the next year of over $50 million, although steps were put in place to reduce this projected deficit to $25 million in that year, and to achieve a projected balanced budget the following year.

The State of California took action to ensure that this fiscal crisis in the Oakland schools did not deprive students of their educational opportunities. The California Legislature passed Senate Bill No. 39 (2003–2004 Reg. Sess.) (Bill No. 39; see Stats. 2003, ch. 14), emergency legislation authored by Senator Perata of Oakland in 2003.

In summary, Bill No. 39 provides additional emergency funding to the Oakland schools in the total sum of $100 million. The legislation also provides that control of the Oakland schools would temporarily be assumed by the state.[1] The state's Superintendent of Public Instruction, respondent Jack O'Connell, was directed to appoint a state administrator to run the Oakland school system for at least two fiscal years after the appointment of the administrator, or until the projected completion of a specified "improvement plan" to resolve the fiscal crisis and return the district to solvency, as per section (5)(e) of Bill No. 39.

Pursuant to the enactment of Bill No. 39, a state-appointed administrator assumed control of the Oakland schools in June 2003, displacing the supervisory control formerly exercised by the elected governing board of the Oakland school district, which continues to exist and act in an advisory role.

Appellants alleged that Bill No. 39, by allowing a temporary state takeover of the local Oakland schools, constituted a violation of the "home rule" provisions of the California Constitution, which provide for local control over certain local governmental functions, and conflicted with provisions of the Oakland City Charter providing for an elected school board.[2] Appellants'

---

[1] Section 3 of Bill No. 39 provides: "The Legislature finds and declares that because of the fiscal emergency in which the Oakland Unified School District finds itself and in recognition of the March 27, 2003 request of the governing board of the district for a loan from the state, it is necessary that the Superintendent of Public Instruction assume control of the district in order to ensure the return to the district of fiscal solvency."

[2] When this action was filed, the Oakland City Charter called for the election of seven district school directors, and the appointment of three additional members by the mayor, but the provision for appointed members has since lapsed. As to the elected members, the charter provides that they "shall be elected at the times and in the manner in this Charter provided for members of the [City] Council and shall be required to have the same qualifications." (Oakland City Charter, art. IV, § 404 (a).) The charter refers to the state Education Code for all other matters pertaining to the members of the school board and their duties, other than the manner of their election.

complaint further alleged that the respondent State Superintendent of Public Instruction was engaged in the "illegal waste and expenditure of public funds" by implementing the provisions of Bill No. 39.

The trial court rejected appellants' claims as a matter of law, sustaining without leave to amend defendants' general demurrer, and entering judgment on their behalf.

## II.  DISCUSSION

### A.  Standard of Review

A demurrer "tests the legal sufficiency of the complaint . . . ." (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406].) On appeal from a dismissal following such an order, we assume the truth of all facts properly pleaded in the complaint and its exhibits or attachments, as well as those facts that may fairly be implied or inferred from the express allegations. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].)

In reviewing such a ruling, we look "only to the face of the pleadings and to matters judicially noticeable . . . ." (*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 239, fn. 2 [244 Cal.Rptr. 764], italics omitted.) We are "not bound by the trial court's construction of the complaint . . . ." (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958 [93 Cal.Rptr.2d 413].) Rather, we independently evaluate the complaint, construing it liberally, giving it a reasonable interpretation, if possible, and reading it as a whole, while viewing its parts in context. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We must determine de novo whether the factual allegations of the complaint are adequate to state a viable cause of action under any legal theory. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].)

### B.  The Demurrer Was Properly Sustained

Our analysis starts with the "home rule" provisions of the California Constitution.

As a charter city recognized in the California Constitution (Cal. Const., art. XI, §§ 2, 3), Oakland is empowered to govern its own "municipal

affairs." In this regard, article XI, section 5, subdivision (a), reads in relevant part: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." This constitutional "home rule" doctrine reserves to charter cities the right to adopt and enforce ordinances, provided the subject of the regulation is a " 'municipal affair' " rather than being a subject of " 'statewide concern.' " (*Johnson v. Bradley* (1992) 4 Cal.4th 389, 399 [14 Cal.Rptr.2d 470, 841 P.2d 990] (*Johnson*); accord, *Traders Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 45 [112 Cal.Rptr.2d 677] (*Traders*).)

Appellants maintain that Bill No. 39's requirement that a state-appointed administrator temporarily manage the Oakland schools conflicts with the "home rule" doctrine, as well as with provisions of the Oakland City Charter providing for the election of a local school board.

■ The relevant case law has identified the steps we must take in resolving this controversy. "First, a court must determine whether there is a genuine conflict between a state statute and a municipal ordinance. [Citations.] Only after concluding there is an actual conflict should a court proceed with the second question; i.e., does the local legislation impact a municipal or statewide concern?" (*Barajas v. City of Anaheim* (1993) 15 Cal.App.4th 1808, 1813 [19 Cal.Rptr.2d 764]; see also *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 364 [87 Cal.Rptr.2d 654, 981 P.2d 499]; *Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1054 [77 Cal.Rptr.2d 189, 959 P.2d 347].) Finally, if a genuine conflict is presented and the state statute qualifies as a matter of statewide concern, "we next consider whether it is both (i) reasonably related to the resolution of that concern, and (ii) 'narrowly tailored' to limit incursion into legitimate municipal interests." (*Johnson, supra*, 4 Cal.4th at pp. 404, 406, fn. 17.)

### 1. *Is There a Genuine Conflict?*

■ As we have noted, under California's Constitution, charter cities have been specifically granted the power to manage certain of their own affairs without interference from the state Legislature. (Cal. Const., art. XI, § 5.) In particular, subdivision (b) of this constitutional provision directly grants to charter cities the power and authority to legislate in four "core" areas "that are by definition, 'municipal affairs.' " (*Johnson, supra*, 4 Cal.4th at p. 398.) When a charter city's enactment falls within one of these core areas, it supersedes any conflicting state statute. (See, e.g., *Ector v. City of Torrance* (1973) 10 Cal.3d 129, 132–133 [109 Cal.Rptr. 849, 514 P.2d

433].) The "conduct of city elections" is one of the few specifically enumerated core areas of autonomy for home-rule cities. (Cal. Const., art. XI, § 5, subd. (b).) Additionally, Article IX section 16, subdivision (a) authorizes a charter city to provide for "the manner in which . . . and the terms for which the members of boards of education shall be elected or appointed . . . ."

Appellants claim that Bill No. 39 conflicts with those provisions of the Oakland charter calling for the election of the Oakland school board. We perceive no such genuine, actual or direct conflict. The Oakland school board continues to be elected as it always was before the emergency legislation, and the hiatus in the exercise of its ultimate responsibility is only temporary, during which period the board continues to serve an advisory role. It cannot be said that Bill No. 39 interferes with the election of members of the school board.

■ Most certainly, Bill No. 39 does provide that the management of the school district is, temporarily, in the hands of a state appointed administrator until the present fiscal crisis may be dealt with and the district may be returned to definite solvency. But this temporary administration and goal of solvency does not conflict with any provision of the Oakland charter, or prevent the election of a local school board in the manner specified by the Oakland charter. (Cf. *Traders, supra,* 93 Cal.App.4th at p. 45.) We find no genuine conflict between Bill No. 39 and the text of the Oakland charter regarding city elections. (93 Cal.App.4th at p. 45.)

This conclusion would normally mean that our review is at an end, since in the absence of such a conflict, we need not proceed to the next portion of our analysis. (See *Barajas v. City of Anaheim, supra,* 15 Cal.App.4th at p. 1813; see also *Associated Builders & Contractors, Inc. v. San Francisco Airports Com., supra,* 21 Cal.4th at p. 364; *Rider v. City of San Diego, supra,* 18 Cal.4th at p. 1054.) Nevertheless, we choose to address the remaining relevant factors identified by the case law.

### 2. *Statewide Concern or Local Concern?*

■ It is well established, and even appellants do not dispute, that education is a matter of statewide concern, as is the need to rescue school districts from insolvency in order to continue the education of students. (*Butt v. State of California* (1992) 4 Cal.4th 668, 691–692 [15 Cal.Rptr.2d 480, 842 P.2d 1240] (*Butt*).) Our high court has specifically referred to the "State's plenary power over education" as affording an adequate basis for the complete takeover of an insolvent local school district which requires an emergency state appropriation. (*Id.* at p. 692.) Consideration of this factor does not support appellants' challenge to Bill No. 39.

### 3. *Serving a State Interest*

The last step of our analysis is to compare the scope of the statute to the statewide concerns sought to be addressed. The California Supreme Court, in *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1 [283 Cal.Rptr. 569, 812 P.2d 916] (*CalFed*), summarized this step as ensuring that " 'the sweep of the state's protective measures may be no broader than its interest.' [Citation.]" (*Id.* at p. 25.)

As we have pointed out, under Bill No. 39, the management of the school district is, *temporarily*, in the hands of a state-appointed administrator, until the present fiscal crisis may be dealt with and the district may be returned to definite solvency. Such a *temporary* administration during the period necessary to return the school district to long term financial stability does not appear overbroad, and seems narrowly tailored to the fiscal emergency faced by the Oakland school district, and the need to ensure that the additional state funds being provided are not wasted. (See *CalFed, supra,* 54 Cal.3d at p. 25; *Butt, supra,* 4 Cal.4th at p. 692; cf. *Traders, supra,* 93 Cal.App.4th at p. 45.)

Appellants urge that there was a more narrow option available to the Legislature. The Legislature could have funded Oakland's debt, without insisting on new fiscal oversight measures that gave temporary control of the district to a state appointed administrator. For instance, emergency legislation could have provided for the appointment of a state "trustee," possessing a more limited power to suggest or veto the actions of the elected board. We cannot say that the option appellants propose would have sufficiently dealt with the fiscal problems facing the Oakland school district. We are unable to second-guess the Legislature's judgment in this regard, especially where the Legislature is exercising the state's "plenary power" to rescue a local school district experiencing a self-induced financial emergency. (See *Butt, supra,* 4 Cal.4th at p. 692.)

It appears that none of the relevant factors identified in the case law would support appellants' challenge to Bill No. 39, and the trial court was correct to conclude as a matter of law that Bill No. 39 is not unconstitutional. (See *Traders, supra,* 93 Cal.App.4th at p. 45.)

### 4. *Waste of Public Funds?*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante,* page 91.

## III. *DISPOSITION*

The judgment of dismissal is affirmed.

Jones, P. J., and Gemello, J., concurred.

On November 18, 2005, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied February 1, 2006, S139254. Chin, J., did not participate therein.