Filed 2/10/15  Robinson v. Bank of America CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RITA ROBINSON et al., | |
| Plaintiffs and Appellants, | E057590 |
| v. | (Super.Ct.No. CIVDS1113653) |
| BANK OF AMERICA, N.A., INDIVIDUALLY AND AS A SUCCESSOR ETC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.  Affirmed.

The Thomas Law Group, Stephen J. Thomas and Tim C. Lin for Plaintiffs and Appellants.

Reed Smith, David J. de Jesus, Michael E. Gerst and John Cooper Green for Defendant and Respondent.

1

In a Second Amended Complaint (SAC), plaintiffs and appellants Rita Robinson (Robinson) and Jason Stiller (Stiller) sued defendant and respondent Bank of America, NA (Bank)[1] for (1) fraud; (2) negligent misrepresentation; (3) promissory estoppel; (4) unfair and deceptive business practices (Bus. & Prof. Code, § 17200)[2]; (5) unjust enrichment; (6) equitable indemnity; (7) violation of the Mortgage Foreclosure Consultant Act of 1979; and (8) untrue and misleading representations (§ 17500). The trial court sustained Bank's demurrer to the SAC on all causes of action, without leave to amend. The trial court dismissed the case with prejudice.

Robinson and Stiller (collectively, plaintiffs) raise five issues on appeal. First, plaintiffs assert the SAC reflects sufficient facts to support causes of action for fraud and negligent misrepresentation. Second, plaintiffs contend their First Amended Complaint (FAC) set forth sufficient facts to support a breach of contract cause of action. Third, plaintiffs assert the FAC reflects sufficient facts to support a cause of action for breach of the implied covenant of good faith and fair dealing. Fourth, plaintiffs contend they adequately pled promissory estoppel. Fifth, plaintiffs assert they sufficiently pled a violation of the unfair competition law (§ 17200). We affirm the judgment.

---

[1] Plaintiffs also sued BAC Home Loans Services as "an unknown entity"; however, in the trial court and again here on appeal Bank of America, N.A. entered its appearance as "Bank of America, N.A. (for itself, erroneously sued as 'Bank of America' and as successor by merger to BAC Home Loans servicing, LP, erroneously sued as 'BAC Home Loan Services')" so we treat them as a single entity.

[2] All subsequent statutory references will be to the Business and Professions Code unless otherwise indicated.

**FACTUAL AND PROCEDURAL HISTORY**

A.     MODIFICATION AND FORECLOSURE

The following facts are taken from plaintiffs' SAC.  In December 2006, plaintiffs purchased a home in Rialto (the property) for $271,000.  Plaintiffs used a mortgage from Bank to purchase the property.  At some point, one of the plaintiffs was laid off from his/her job, and therefore suffered a loss of income.  In 2009, plaintiffs applied for a mortgage modification.  Bank agreed to a trial mortgage modification, which would begin in December 2009.  During the trial modification period, plaintiffs' mortgage payments were lower than their original mortgage payments.

Plaintiffs had been current on their mortgage payments prior to starting the trial mortgage modification.  Plaintiffs made their trial loan modification payments as well.  In May 2011, plaintiffs' application for a loan modification was approved by Bank's underwriter and forwarded to "quality control for final approval."  In July 2011, plaintiffs contacted a "trustee" regarding reinstating their loan; we infer plaintiffs contacted Bank.  Plaintiffs "requested to be put back into a situation that they were in before" they began making the trial modified mortgage payments.  Bank informed plaintiffs a foreclosure sale was scheduled for the property on August 4th, and $13,488.82 would be needed to stop the sale.  Plaintiffs borrowed the money from family members, and "save[d] their home."  In September 2011, Bank approved a mortgage modification for plaintiffs.  The loan modification paperwork was backdated to March 1, 2010.  Plaintiffs did not sign the mortgage modification documents.

3

B.    SECOND AMENDED COMPLAINT

In plaintiffs' SAC, in the fraud cause of action, plaintiffs allege Bank acted fraudulently because it had "no intention" of modifying plaintiffs' loan.  Plaintiffs support this assertion by alleging foreclosure activity, such as the scheduling of the sale, was taking place while plaintiffs were seeking a loan modification.  Plaintiffs asserted they asked a Bank employee if their mortgage account would be considered delinquent if they made the lower, modified payments, and the Bank employee responded, "no."  In regard to negligent misrepresentation, plaintiffs asserted the misrepresentations set forth in the fraud cause of action also qualified as negligent misrepresentations.

In the promissory estoppel cause of action, plaintiffs alleged Bank promised not to proceed with foreclosure activities if plaintiffs made their trial loan modification payments.  Plaintiffs alleged Bank breached its promise by recording a Notice of Default against the property.  In regard to the unfair competition cause of action (§ 17200), plaintiffs assert Bank engaged in unfair competition by failing to perform as promised in modifying plaintiffs' loan.  For example, Bank was "unwilling to modify their loans."

Bank demurred to the SAC.  In October 2012, at a hearing on the demurrer, the trial court explained plaintiffs failed to execute the loan modification documents.  The court explained plaintiffs were obligated to make monthly mortgage payments, so the payments made during the trial modification period could not constitute damages.  The court explained, "The plaintiffs bought this property, had a mortgage, were obligated to

4

pay, were in default. There was a—there were negotiations that took place. There was a trial modification period, which was never executed."

Plaintiffs explained they did not sign the loan modification documents because Bank told plaintiffs they still owed $16,000, but plaintiffs asserted they had already paid the required sum to make their loan current—there appears to be a discrepancy in the record regarding whether the sum owed to make the original mortgage current was $16,000 or $13,488.82. Plaintiffs argued Bank acted wrongfully by placing plaintiffs in default and accumulating charges for penalties and interest on the original loan, while telling plaintiffs that their loan modification would be approved and not disclosing the various foreclosure activities taking place against the property. The trial court sustained the demurrer without leave to amend.

C.     FIRST AMENDED COMPLAINT

In the FAC, plaintiffs alleged a cause of action for breach of a written contract.[3] Plaintiffs alleged they entered into a contract with Bank, wherein Bank agreed to modify plaintiffs' loan, and Bank breached its obligation by refusing to perform. Also, in the FAC, plaintiffs alleged a cause of action for breach of the implied covenant of

---

[3] The breach of contract and breach of the implied covenant of good faith and fair dealing causes of action appear in the FAC, but not in the SAC. Plaintiffs have raised issues on appeal relating to these causes of action. Typically, an appellant may only challenge final rulings of the trial court as to the operative complaint, which in this case is the SAC, and may not challenge rulings on prior intermediate pleadings, such as the FAC. (See *Foreman & Clark Corp v. Fallon* (1971) 3 Cal.3d 875, 884 [amended pleading supplants all prior complaints]; see also *Lee v. Bank of America* (1994) 27 Cal.App.4th 197, 215 [same].) However, Bank addresses the merits of plaintiffs' arguments concerning the FAC, so we do as well.

good faith and fair dealing. Plaintiffs asserted Bank breached the implied covenant by using plaintiffs' modified loan payments to pay for property tax and insurance premiums when "the Loan did not provide for an imposition of an impound account." Plaintiffs asserted the payments were supposed to be applied "to principal."

Bank demurred to the FAC. At the hearing on the demurrer to the FAC, the trial court explained the breach of contract and breach of implied covenant causes of action failed because (1) there is no private right of action under the Home Affordable Modification Program (HAMP); and (2) "there is no contract." The trial court cited the unsigned loan modification documents as evidence of there not being a contract.

Plaintiffs asserted Bank entered into a contract "over the phone," by telling plaintiffs they would receive a permanent loan modification. Bank asserted that if the contract were oral, then it was barred by the statute of frauds, and if it were written, then plaintiffs failed to attach it to the FAC. The trial court asked plaintiffs' attorney how she would amend the FAC to address the statute of frauds problem. Plaintiffs' attorney said plaintiffs could plead detrimental reliance. The trial court asked if plaintiffs had a written contract. Plaintiffs' attorney explained that plaintiffs "don't understand th[e] statute of frauds. They had a contract."

The trial court sustained the demurrer, without leave to amend, on the breach of contract cause of action and the breach of the implied covenant cause of action. The trial court explained, "The law requires that the contract be in writing, and it doesn't sound like you can plead around that in any way."

6

**DISCUSSION**

A.    STANDARD OF REVIEW

"'"A demurrer tests the legal sufficiency of the complaint . . . .' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] If no liability exists as a matter of law, we must affirm that part of the judgment sustaining the demurrer. [Citation.]" (*Trader Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43.)

B.    FRAUD

Plaintiffs contend the SAC set forth sufficient allegations to support a cause of action for fraud. (Civ. Code, § 1572.)

"The elements of fraud that will give rise to a tort action for deceit are: '"(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage."' [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.) "The requirements for pleading fraud in most cases is well established: '"'fraud must be pled specifically; general and conclusory

7

allegations do not suffice. [Citations.]" (*Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1261-1262.)

Plaintiffs allege Bank engaged in fraud (1) on September 18, 2009, when one of the plaintiffs asked "Keith a supervisor in the Home Retention Department" if plaintiffs' account would be considered delinquent if they made the lower, modified payments, and Keith responded, "[N]o, since [you] are contracting with the bank [you] are protected"; and (2) by not intending to give plaintiffs a loan modification.

Plaintiffs' assertion that Bank did not intend to modify their loan fails because plaintiffs allege they were offered a loan modification. Since plaintiffs were offered a loan modification, it does not appear Bank acted fraudulently in this regard.

Next, we address plaintiffs' assertion that Bank said plaintiffs' account would not be delinquent. This allegation fails because plaintiffs have not pled justifiable reliance. Reliance relates to causation. (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1092.) "[S]pecific pleading is necessary to 'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom. [Citation.]" (*Ibid.*)

In the SAC, plaintiffs do not allege that they stopped making their mortgage payments because Keith told them their account would not be delinquent. Rather, plaintiffs allege they stopped making their original mortgage payments due to a loss of income resulting from one of the plaintiffs losing his/her job. Plaintiffs have failed to explain how the statements made by Keith caused them to suffer harm. The only specifically alleged harm is that plaintiffs were required to immediately pay $13,488.82.

8

Since plaintiffs cite lost income, rather than Keith's comment, as their reason for not making full payments on the original mortgage, they have not explained how they justifiably relied on Keith's comment such that it caused them harm. Rather, it appears from plaintiffs' SAC that, if Keith had not made the comment, the same result would have occurred. Accordingly, we conclude plaintiffs have not sufficiently pled a cause of action for fraud.

### C. NEGLIGENT MISREPRESENTATION

Plaintiffs contend they provided sufficient allegations to support a cause of action for negligent misrepresentation.

"Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages. [Citation.]" (*Fox v. Pollack* (1986) 181 Cal.App.3d 954, 962.)

Plaintiffs' negligent misrepresentation cause of action relies upon the allegations in the fraud cause of action; the same alleged misrepresentations comprise both causes of action. Thus, the negligent misrepresentation cause of action fails for the same reasons as the fraud cause of action: (1) Bank did offer a loan modification, and (2) plaintiffs have not alleged they justifiably relied upon Keith's statement such that it led to damages. Accordingly, we conclude the trial court properly sustained the demurrer on the negligent misrepresentation cause of action.

9

D.    BREACH OF CONTRACT

Plaintiffs contend the FAC set forth sufficient facts to support a breach of contract cause of action.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Mortgages come within the statute of frauds. (*Secrest v. Security Nat. Mortg. Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552.) "'A mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property.'" (*Ibid.*, quoting Civ. Code, § 2922.)

In the FAC, plaintiffs allege they entered into a written contract with Bank, and that written contract required Bank to modify plaintiffs' mortgage. Plaintiffs do not provide any other identifying information about the contract. Plaintiffs attached the unsigned loan modification documents to the FAC. Plaintiffs' breach of contract claim fails because the loan modification documents reflect an offered loan modification. For example, Bank offered to modify plaintiffs' interest rate of 5.750 percent to 2.750 percent for five years. Since it appears Bank offered to modify plaintiffs' mortgage, and plaintiffs assert the contract at issue required Bank to modify their mortgage, plaintiffs have not sufficiently pled breach of contract by Bank because it appears Bank fulfilled its obligation. Accordingly, the trial court properly sustained the demurrer on the breach of contract cause of action.

10

E.    BREACH OF THE IMPLIED COVENANT

Plaintiffs assert the FAC reflects sufficient facts to support a cause of action for breach of the implied covenant of good faith and fair dealing.

"Every contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract. [Citations.] The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises. [Citations.] The scope of conduct prohibited by the implied covenant depends on the purposes and express terms of the contract. [Citation.] Although breach of the implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of contract. [Citation.]" (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 885, fn. omitted.)

In the FAC, plaintiffs allege Bank breached the implied covenant by applying the modified loan payments to plaintiffs' property tax and insurance bills because "the Loan did not provide for an imposition of an impound account for the payment of property tax and insurance premium payments." "The Loan" is plaintiffs' original mortgage. Plaintiffs' allegations fail because they complain about actions taken by Bank during the trial modification period but cite to the contract for the original mortgage. Plaintiffs do not explain how the original mortgage contract controlled the modified payments. Since plaintiffs do not indicate what contract, if any, controlled the trial modified loan payments, we conclude the trial court properly sustained the demurrer on this implied covenant cause of action.

11

In plaintiffs' appellants' reply brief, they assert Bank violated the implied covenant because HAMP required Bank to offer plaintiffs a permanent loan modification upon completion of the trial modification period. Plaintiffs assert Bank's offered loan modification was not a good faith offer because it required plaintiffs to become current on their original mortgage, i.e., paying $16,000 or $13,488.82. First, plaintiffs fail to explain how they have a private right of enforcement under HAMP. (See *Wigod v. Wells Fargo Bank, N.A.* (2012 7th Cir) 673 F.3d 547, 559, fn. 4 ["HAMP does not create a private federal right of action for borrowers against servicers"].) As a result, they have not identified what contract is at issue in this cause of action because it is unclear how they can privately enforce HAMP. Second, plaintiffs allege they paid $13,488.82 to become current on their original mortgage, so it is unclear why the modification offer was not a good faith offer. In other words, if the Bank offered a loan modification with the condition that plaintiffs become current on their original mortgage, and plaintiffs became current on their original mortgage but then rejected the loan modification, it is unclear why plaintiffs believe Bank's offer was not in good faith.

F.    PROMISSORY ESTOPPEL

Plaintiffs contend they adequately pled promissory estoppel.

""""The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'"" [Citation.]" (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 225.)

12

In the promissory estoppel cause of action portion of the SAC, plaintiffs allege, "Defendants made a promise not to proceed with foreclosure proceedings of the property as long as Plaintiff[s] made interim payments." Plaintiffs assert Bank breached this obligation by recording a Notice of Default against the property. Plaintiffs allege that as a result of that breach, plaintiffs "lost the opportunity to apply for other programs and government assistant [*sic*]."

Plaintiffs fail to sufficiently allege that their reliance on the alleged promise caused injury. Plaintiffs' claim that they lost an opportunity to seek other relief is unsubstantiated by any allegations regarding what exact opportunities were lost. For example, there are no allegations that plaintiffs took any steps to initiate bankruptcy, short sell, or refinance. Plaintiffs do not explain how Bank's alleged promise prevented them from pursuing other opportunities. Plaintiffs entered the loan modification program in October 2009. The foreclosure proceedings began in 2011. Plaintiffs' allegations do not reflect how Bank's promise caused them to not pursue other opportunities for saving their home for nearly one and one-half years. Further, it is unclear how the opportunities were lost when it appears from the SAC that plaintiffs rejected the offered loan modification and are current on their original mortgage payments—plaintiffs have not explained how they are prevented from seeking other assistance in this situation. Due to the lack of allegations related to reliance and injury, we conclude the trial court did not err by sustaining the demurrer on the promissory estoppel cause of action.

13

G.    UNFAIR COMPETITION

Plaintiffs assert they sufficiently pled a violation of the unfair competition law (UCL).  (§ 17200.)

"The UCL outlaws as unfair competition 'any unlawful, unfair or fraudulent business act or practice . . . .  Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition.  [Citation.]'  [Citation.]" (*Morgan v. AT&T Wireless Services, Inc.*, *supra*, 177 Cal.App.4th at p. 1253.)  "An unlawful business practice under the UCL is """"anything that can properly be called a business practice and that at the same time is forbidden by law.""""  [Citation]." (*Id.* at 1254.)

In the SAC, plaintiffs allege Bank committed four violations of the UCL.  First, plaintiffs allege Bank "[f]ail[ed] to perform promises made modifying [plaintiffs'] loan in exchange for lower payments."  It is unclear to what promises plaintiffs are referring, and it is unclear how Bank allegedly failed to perform the promises.  Due to the lack of specific information, this first alleged violation does not state a claim under the UCL.

Second, plaintiffs allege Bank deceived plaintiffs by causing plaintiffs to believe (a) the trial modification would be permanent, and (b) the missed mortgage payments on the original mortgage "would not endanger or adversely impact their loan or credit."  In regard to the trial modification being permanent, this allegation fails because Bank offered plaintiffs a loan modification.  It is unclear how Bank could have been deceptive about offering a permanent loan modification when Bank offered plaintiffs a permanent loan modification.

14

We now turn to the next part of this alleged violation. Plaintiffs are alleging Bank violated the UCL by telling plaintiffs their original mortgage would remain status quo until the loan modification process was complete. Plaintiffs' loan modification and foreclosure interactions with Bank occurred between 2009 and 2011. The Homeowner's Bill of Rights, which prohibits "dual tracking" by banks became effective in 2013. "Dual tracking" refers to a bank processing a mortgage for possible modification while at the same time pursuing foreclosure on the property. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86, fn. 14.) Since the law against dual tracking was not effective at the time Bank allegedly told plaintiffs their original mortgage would remain status quo during the loan modification process, it is unclear what law Bank would have violated for purposes of a UCL claim.

To the extent plaintiffs intend to focus on the "unfair," rather than "unlawful" portion of the UCL law, their claim also fails. "'[T]o show a business practice is unfair, the plaintiff must show the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."' [Citation.]" (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1366.) Plaintiffs' allegations do not explain how dual tracking their loan modification and original mortgage amounts to a violation of antitrust laws or harms competition. Thus, this alleged violation does not state a claim under the UCL.

Third, plaintiffs allege Bank violated the UCL by luring them into making lower, modified mortgage payments, then being unwilling to modify plaintiffs' mortgage, and

15

when plaintiffs requested to "be put back into a situation that they were in before they were lured into the lower payments," Bank denied plaintiffs' requests. As explained *ante*, the allegation that Bank was unwilling to modify plaintiffs' mortgage is belied by Bank's offer to modify plaintiffs' mortgage.

The allegation that Bank refused to return plaintiffs to their original mortgage is belied by the allegation that Bank told plaintiffs they would owe $13,488.82 to become current on the original mortgage, plaintiffs paid that amount, and plaintiffs have not included any allegation related to being evicted or removed from the property. Thus, it appears from the allegations that plaintiffs contacted Bank to have their original mortgage reinstated, Bank provided an amount for the original mortgage to be made current, plaintiffs paid that amount, and still own the property. Accordingly, it is unclear from these allegations how Bank denied plaintiffs' request to return to their original mortgage. Due to these contradictions, the allegations do not reflect a claim under the UCL.

Fourth, plaintiffs allege Bank violated the UCL by submitting false statements about plaintiffs' income, expenses, and occupation status "in [a]n attempt to induce federally insured lenders to agree to reimburse the bank for the default." Plaintiffs allege Bank violated state law against obtaining money by false pretenses (Pen. Code, § 532, subd. (a)) and federal law against making false statements to agencies such as the Federal Housing Administration (18 U.S.C. § 1014).

As explained *ante*, the law against dual tracking was not effective at the time plaintiffs were pursuing their mortgage modification. Plaintiffs have not sufficiently

alleged that a contract or promise existed, preventing Bank from dual tracking. As a result, Bank was not legally prevented from pursuing foreclosure. Therefore, if Bank reported foreclosure proceedings had been initiated, it is unclear how that information would be false, incorrect, or wrongful.

Plaintiffs do not explain what false information was given regarding their incomes, expenses, and job statuses. Plaintiffs do not explain how they were harmed by this alleged act. (§ 17204 [UCL standing for private individuals restricted to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"].) For example, plaintiffs do not explain how, if false information was given for insurance purposes, plaintiffs suffered harm since plaintiffs ultimately became current on their original mortgage payments. In other words, since there ultimately was not a foreclosure, it is unclear how the false insurance information could have harmed plaintiffs. As a result, plaintiffs have not sufficiently alleged a UCL claim.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

KING
J.

17