Filed 3/12/15  Aniel v. E*Trade Bank CA!/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ERLINDA ABIBAS ANIEL,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>E*TRADE BANK et al.,<br><br>Defendants and Respondents. | A141246<br><br>(San Mateo County<br>Super. Ct. No. CIV514402) |

Plaintiff Erlinda Abibas Aniel appeals from the judgment of dismissal entered following the sustaining of a general demurrer to her second amended complaint. Plaintiff contends that three of her causes of action were sufficient to withstand the demurrer and stated claims for relief for the allegedly illegal practices that attended the non-judicial repossession of improved real property in Daly City.  We conclude that the trial court correctly determined that each of the causes of action was legally deficient, and we affirm.

**BACKGROUND**

The operative pleading, plaintiff's 41-page verified second amended complaint purported to allege the following seven causes of action:  "(1) Wrongful Foreclosure (Violation of Civil Code § 2924) (2) Set Aside Trustee's And/Or Cancel Trustee's Sale (3) Declaratory Relief (4) Quiet Title (5) Fraudulent Concealment (6) Fraud (7) Violation

1

of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.)." [1]  However, on appeal plaintiff contends only that she stated sufficient claims for wrongful foreclosure, fraud, and violation of the Unfair Competition law (UCL).  Moreover, the complaint named as defendants entities that are not parties to this appeal.  The respondents here are the parties who interposed the general demurrer and who are covered by the judgment, namely, E*Trade Bank, E*Trade Financial Corporation, and Bayview Loan Servicing (and which are collectively referred to hereafter as E*Trade where appropriate).  Therefore, the following recitation does not—except when necessary to maintain coherency—include allegations respecting either the causes of action or the parties not at issue on this appeal.

## The Complaint

In 2000, plaintiff purchased improved real property in Daly City.  Plaintiff refinanced the property in 2004.  The details were alleged as follows:

"On or around February 23, 2004, Plaintiff . . . signed a Promissory Note" in favor of the lender, Countrywide Homes Loans, Inc. (Countrywide).  At the same time plaintiff also "executed a Deed of Trust, a security instrument for the Promissory Note.  The Deed of Trust identified Countrywide as the Lender.  The Deed of Trust identified MERS,[2]

---

[1] During this opinion we shall be making minor nonsubstantive editorial changes in quoting from the complaint and the trial court's written ruling on the demurrer.  Most of those changes are based on there originally being another plaintiff who was, in the words of plaintiff's counsel, "removed for the second amended complaint."  Thus, references to "plaintiffs" have been changed to "plaintiff," with corresponding grammatical and syntactical modifications.

[2] An acronym for Mortgage Electronic Registration System.  This entity has been described as follows:  " 'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans.  Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS.  MERS is listed as the grantee in the official records maintained at county register of deeds offices.  The lenders retain the promissory notes, as well as the servicing rights to the mortgages.  The lenders can then sell these interests to investors without having to record the transaction in the public record.  MERS is compensated for its services through fees charged to participating MERS members.' [Citation.]  'A side

acting solely as the nominee for the Lender, the Lender's successors, and assigns as the Beneficiary. The Deed of Trust identified CTC Real Estate Services [CTC] as the Trustee. The Deed of Trust was recorded in the County of San Mateo on February 27, 2004. . . . [¶] Based on information and belief, sometime after the Promissory Note was executed, Countrywide sold its interest in the Promissory Note and Deed of Trust to the secondary market, and to a securitized trust.[3] Based on information and belief, Countrywide was paid off by Fannie Mae with a commission of around 2% of

---

effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS members is unknown to those outside the MERS system.' [Citation.]" (*Gomes v. Countrywide Home Loans, Inc*. (2011) 192 Cal.App.4th 1149, 1151 (*Gomes*).) In other words, the promissory notes "may . . . be transferred among members without requiring recordation in the public records." (*Fontenot v. Wells Fargo Bank, N.A*. (2011) 198 Cal.App.4th 256, 267.)

[3] Plaintiff states in her opening brief that that she "alleged that the debt was cancelled because the loan was not properly transferred into the Securitized Trust according to the strict terms of the PSA." In her reply brief, plaintiff states "the trust provisions in the PSA or other trust document specifically provide for the method by which loans enter and exit the trust," and that she alleged "that the loan was never transferred into the trust." The abbreviation "PSA" appears only once in the complaint, and without explanation of what is being abbreviated: "Also, the Deed of Trust was not assigned when the loan was sold in 2004, which was a violation of the PSA, and resulted in none of the Defendants having the ability or legal right to allege to be a Beneficiary, agent, or trustee and foreclose the property." Defendants in their brief offer that PSA stands for "Pooling and Servicing Agreement," which seems credible because the phrase does appear to enjoy long-established usage. (See Stats. 2008, ch. 69, § 1, subd. (c); Civ. Code, § 2923.6, subd. (a); *Rossberg v. Bank of America, N.A*. (2013) 219 Cal.App.4th 1481, 1486-1487 (*Rossberg*); *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1093; *Jenkins v. JPMorgan Chase Bank, N.A*. (2013) 216 Cal.App.4th 497, 515 (*Jenkins*); *Arabia v. BAC Homes Loans Servicing, L.P*. (2012) 208 Cal.App.4th 462, 466-467; *Seamen's Bank v. Superior Court* (1987) 190 Cal.App.3d 1485, 1493-1494; fn. 7, *post*.)

All of this leaves us somewhat puzzled. Without some kind of explanation of what "PSA" means, the allegation quoted not only comes close to defying comprehension, it also does not bear the constructions placed upon it by plaintiff in her briefs. We are also at a loss to understand how real property purchase loans "enter" or "exit" a trust. The money itself is used to pay the owner of the property being sold, and if the funds "enter" or "exit" anything one would surmise it would be an escrow account.

3

$497,000.00, which was $9,940.00, and retained the loan servicing rights of Plaintiff's loan.  However, Countrywide failed to execute the appropriate Assignment of Deed of Trust, and Endorsement of the Note that was required to secure the subsequent purchaser's secured interest in the Plaintiff's loan. . . .  [¶] Based on information and belief, when Countrywide dissolved, Plaintiff's obligations on the loan were canceled because Countrywide did not grant, assign, or transfer any beneficial interest in the Note or the Deed to any other Defendant or third party prior to dissolving and selling its servicing rights to Defendant Bank of America.  From this point on, Plaintiff's obligation under the loan was canceled."

Commencing in August 2008, plaintiff unsuccessfully negotiated with Countrywide for a "loan modification" after being told by Countrywide representatives "to stop making payments" because "she had to be in default in order to create a 'hardship'. . . which was necessary to be considered and approved for a loan modification."  "In reliance of Countrywide representatives' advice, Plaintiff chose to stop making mortgage payments for the months of August 2008, September 2008 and October 2008."  Plaintiff was this thus "tricked . . . into defaulting on her loan."  Plaintiff continued in discussion with Countrywide representatives until February 2009, when she filed for bankruptcy protection.  At this time plaintiff learned that Bank of America (acting through BAC Home Loan Servicing, a subsidiary) was involved, apparently as the current "servicer on behalf of the 'holder of Plaintiff's note,' " and that her loan "was seriously delinquent."  "On December 02, 2010, the Bankruptcy Court discharged Plaintiff's debt on the subject property."

"On January 18, 2011, February 25, 2011, March 30, 2011, and April 28, 2011, Plaintiff received statements from Bank of America Home Loans, which always purported that BAC was the servicer of Plaintiff's note."  "On or around June 16, 2011. . . MERS executed an Assignment of the Deed of Trust, which purports that MERS, as beneficiary, assigned, for value, beneficial interest in the deed of trust to E*Trade.  The document was recorded on June 22, 2011."  "This purported 'transaction' took place after Countrywide was dissolved and no longer in business.  Also, the document fails to

4

disclose that MERS was acting as the nominee for Countrywide, and not as a beneficiary under the Deed of Trust."

"Based on this information and belief, Plaintiff alleges that the Assignment of Deed of Trust contained false information in that MERS never assigned, transferred, or granted, beneficial interest in the Deed of Trust to E*Trade.  Also, based on information and belief, Defendant E*Trade never purchased for value beneficial interest in the Deed of Trust.  This lack of consideration in the Assignment of the Deed of Trust makes the Assignment VOID, as a matter of law, because the transaction never occurred.  As a result, E*Trade did not have an enforceable security instrument with any legal authority and right to exercise the Power of Sale clause in the Plaintiff's Deed of Trust. . . .  Also, based on information and belief, the document was fabricated through the use of Robo-Signing . . . .  Plaintiff believes and alleges that this process was used to fabricate . . . a transaction that never occurred."

Plaintiff further alleged that she denies owing anything to either Bank of America or E*Trade "because the loan has been paid off by the secondary market investor or institutional investors such as Fannie Mae in 2004 right after the escrow was closed." "Based on information and belief, when Bank of America assumed all of the bad assets of Countrywide in 2008, Bank of America, who had knowledge of Countrywide's defaulted loans and that they sold this loan in the secondary market and likely to a Securitized Trust, created a false accounting of Plaintiff's loans and continued to create false monthly statements to create an illusionary amount that Plaintiff owed to deceive the Plaintiff."

On or around December 30, 2011, Asset Foreclosure Services recorded "a fraudulent Notice of Default" that was executed by an individual who "is a notorious robo-signer . . . who had no personal knowledge of the contents or consequences of the documents and did not have the authority to execute such a document."  "Defendants cannot provide any evidence . . . that [quoting from the Notice of Default] the 'present beneficiary under such Deed of Trust has executed and delivered to said trustee, a written declaration and Demand for Sale.  Because none of the Defendants are the present beneficiaries under the Deed of Trust, no such default was ever demanded on the subject

5

property.  Based on this information and belief, the Notice of Default is VOID and never existed."  The execution and recordation of the assignment of the deed of trust, the substitution of trustee, the notice of trustee's sale, and the trustee's deed upon sale all suffer from the same tainted heritage.

Plaintiff alleged that she tried to warn off potential buyers at the trustee's sale held on June 11, 2012, when the property was purchased by Tseng Investment.

Plaintiff incorporated all of these allegations (111 paragraphs of them) in her cause of action for "Wrongful Foreclosure (Violation of Civil Code § 2924)."  Based on their having "fraudulently executed and recorded documents in order to foreclose the property," plaintiff alleged that "defendants do not hold any legal, equitable, or enforceable interest in the Deed of Trust and are not operating under a valid power of sale."

"The foreclosure was wrongful for each of the following reasons, independent of any of the other following reasons:  (1) because Plaintiff's obligation under the Note was canceled prior to Defendants acquiring interest in the canceled debt, (2) because Defendants do not own the Note or an enforceable, legal, equitable, interest in the Deed and do not have a power of sale with respect to the Note and Deed, (3) because Defendants cannot surmount their burden of demonstrating they are the beneficiary under the Deed of Trust, or have a power of sale with respect thereto, (4) Defendants used Robo-Signers to execute foreclosure documents, (5) Defendant falsely identified E*Trade as the owner of the loan at the time the Notice of Default was executed and recorded, (6) falsely claiming MERS transferred beneficial interest in the Deed of Trust to E*Trade after the Notice of Default was executed and recorded, (7) failing to respond to Plaintiff s debt validation request after receiving the Notice of Default, (8) purporting an inaccurate debt in the Notice of Default and Notice of Trustee's sale.  [¶] Based on information and belief, the foreclosure was wrongful because the wrong entity foreclosed Plaintiff's property, when Plaintiff had no obligation on the debt . . . ."

Plaintiff's final allegations were as follows:  "**Plaintiff is not required to allege tender** because the 'Tender Rule' exceptions apply.  Based on information and belief,

6

Plaintiff is challenging [whether] she owes a debt to the Defendants.  Tendering any amount to the Defendants would constitute an affirmative affirmation of the debt."

The pertinent allegations of plaintiff's cause of action for "Fraudulent Concealment and Deceit" against defendants[4] were as follows:

"Based on information and belief, Defendants had exclusive knowledge not accessible to the Plaintiff of material facts pertaining to its foreclosure practices.  Defendants were fully aware that Countrywide had sold their interest in the Loan to the secondary market.  Yet, they continue to mislead the Plaintiff about the status of her debt, their ability to be approved for a loan modification, and the foreclosure of their property."

"E*Trade, willfully, with intent, in concert with the other Defendants, refuses to deny that the Plaintiff's debt has been canceled and that Plaintiff does not owe any money to anyone.  Instead, E*Trade continued to represent that Plaintiff owes money to E*Trade, and that E*Trade was a Beneficiary entitled to foreclose the property.  E*Trade had the duty to disclose the current status of the loan and whether any sale of the interest on the loan occurred and provide sufficient notice under the terms of the Note and Deed.  E*Trade failed to disclose and concealed information about Plaintiff's obligation under the Note and E*Trade's standing to initiate a foreclosure, which injured the Plaintiff."

"Bayview, willfully, with intent, in concert with the other Defendants, ignored the fact that the Plaintiff's debt was canceled before they acquired the servicing rights from Bank of America.  Bayview represented to the Plaintiff that E*Trade was the owner of the loan as early as July 7, 2011, and that the Plaintiff owed $629,413. 24 to E*Trade.  Bayview concealed this information through their subsequent correspondences with the Plaintiff, and continued to attempt to collect a canceled debt.

"Each and every Defendant knew that their actions were wrong and intended to mislead the Plaintiff.  As described herein, their deception was essential to their overall

---

[4] Plaintiff had an additional cause of action for "Fraud," but this was alleged against Bank of America alone.  Bank of America and Countrywide figured prominently in plaintiff's cause of action, but the allegations pertaining to these nonparties are not repeated.

7

plan for unjust enrichment through the wrongful foreclosure of the property. Defendants stood to receive an unjust enrichment without having any interest in the property.

"To this day, Defendants are under the false belief that they own the loan, which was sold in the secondary market years ago with the proper assignments of interest."

Plaintiff's final cause of action, for "Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.), had these allegations: "Beginning at an exact date unknown to Plaintiff but at least since 2008, Defendants—Bank of America, E*Trade, Bayview, and Asset Foreclosure, have committed acts of unfair competition, as defined by Business and Professions Code section 17200, by engaging in the following practices: (1) willfully, with knowledge of the wrongdoing, maliciously executed and recorded foreclosure documents in order to wrongfully foreclose the property; (2) their practice of back-dating assignments, filing false information, and using robo-signers is meant to quickly and efficiently foreclose properties without any legal interest; (3) recording fraudulent Assignments of the Deed of Trust, claiming beneficial interest in the Deed of Trust in violation of Cal. Penal Code § 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission; (4) Defendants falsely identified E*Trade as the owner of the loan at the time the Notice of Default was executed and recorded; (5) falsely claiming MERS transferred beneficial interest in the Deed of Trust to E*Trade after the Notice of Default was executed and recorded; (6) failing to respond to Plaintiff's debt validation request after receiving the Notice of Default; (7) telling the Plaintiff to default on her loan in order to be approved for a loan modification, and; (8) other deceptive business practices."

"Defendants' practice of wrongful foreclosure, and recording of false information in the County of San Mateo is likely to mislead the general public and, consequently, constitutes a fraudulent business act or practice within the meaning of Business and Professions Code section 17200. . . . This conduct is ongoing and continues to this date."

8

"As a direct and proximate result of the aforementioned acts, Plaintiff, along with millions of homeowners, suffered the consequences of losing their homes to entities, which did not put a single dollar into the property they acquired through a Trustee's Sale. Plaintiff lost irreplaceable value in their property, and lose income as a result of these practices. Based on information and belief, Defendants benefits from collecting mortgage payments and late fees, foreclosure related services, and unjustly enriching themselves from their acts of commencing foreclosure proceedings on homeowners."

"Plaintiff and other members of the general public have no other adequate remedy of law in that the County of San Mateo continues to allow foreclosures to continue without proper regulation."

### The Demurrer and The Court's Ruling

E*Trade demurred to all of plaintiff's causes of action on the ground that each fails to state facts sufficient to constitute any cause of action against Bayview or E*Trade. "First, Plaintiff's failure to tender dooms her first four causes of action, those for wrongful foreclosure, set aside and/ or cancel trustee's sale, declaratory relief, and quiet title. Second, Plaintiff' s wrongful foreclosure claim also fails because the nonjudicial foreclosure sale is presumed valid, and Plaintiff does not and cannot rebut that presumption. Third, Plaintiff's claim seeking to set aside the trustee's sale also fails because she does not specifically allege facts demonstrating the invalidity of any foreclosure document. . . . Sixth, Plaintiff's fraudulent concealment fails because neither Bayview nor E*Trade owed her any duty as mere lenders and servicers of money, and Plaintiff failed to satisfy the heighted pleading requirement of fraud. Last, Plaintiff's claim for violation of California Business and Profession Code section 17200 claim fails because she lacks standing, does not plead a viable predicate cause of action, or otherwise plead this claim with sufficient particularity."

9

E*Trade's demurrer was accompanied by a request for judicial notice that was apparently granted.[5] The subjects of E*Trade's request included two orders of the bankruptcy court that in December 2010 granted plaintiff a discharge under section 727

_____

[5] We say "apparently" because there is no formal ruling on E*Trade's request. Evidence Code section 456 provides that "If the trial court denies a request to take judicial notice of any matter, the court shall at the earliest practicable time so advise the parties and indicate for the record that it has denied the request," but there is no corresponding obligation concerning the granting of such a request. Although the absence of a definitive ruling is unfortunate, based on developments at and after the hearing we can surmise that E*Trade's was treated as if it had been granted. Thus: At the ensuing hearing on the demurrer, the court and counsel made numerous references to the documents in E*Trade's request. And in its tentative ruling, and its final order, the court spoke of an argument of plaintiff that was "contradicted by the face of the documents" in the request. Moreover, in another part of the tentative ruling specifying why the demurrer would be sustained as to plaintiff's quiet title cause of action, the court stated: "The contention that the Plaintiff owns the property in fee simple is contradicted by the Bankruptcy order, which concluded that the secured debt was not discharged and the deed of trust on the property was valid. (See RJN, Exhibit H . . . )" It is most unlikely that the court would have relied on this order, which was one of the objects of E*Trade's request, unless the court was treating the bankruptcy court's order as properly before it because the request had already been granted. Finally, although plaintiff made some equivocal remarks at the hearing in apparent opposition to E*Trade's request, she filed no formal written opposition (but there was this single sentence in her opposition to the demurrer: "Plaintiff objects to Defendants' Request for Judicial Notice and objects to assertion of the trust that the entities identified in the documents are in fact beneficiary, trustee, and/or creditor."). Nor did she include any argument in her opening brief that E*Trade's request was defective or improperly granted.

Most decisively, there is this uncontradicted recital in E*Trade's reply to plaintiff's opposition to the demurrer: "[I]n sustaining Defendants' demurrers to the predecessor complaint, *this Court previously took judicial notice of the exact same documents* and held Plaintiff's allegations 'that the sale was void because the initiating parties had no interest in the deed of trust . . . are contradicted by the face of the documents, including Deed of Trust, Assignment of Deed of Trust, and Notice of Default.' Thus, as the documents reflect things that cannot reasonably be controverted, the Court [may] take judicial notice of the same, *just as it did before . . . .*" (Italics added.)

In light of light of the totality of these circumstances, we will deem E*Trade's request for judicial notice to have been granted, and any objection to the materials in the request to have been abandoned.

10

of the Bankruptcy Code (11 U.S.C. § 727); the recorded deed of trust securing plaintiff's $497,000 loan from Countrywide; the recorded assignment of the deed of trust from Countrywide to CTC Real Estate Services; the "Notice of Default and Election to Sell under Deed of Trust" recorded by Asset Foreclosure Services on behalf of E*Trade on December 30, 2011; the "Notice of Trustee's Sale" recorded by Asset Foreclosure Services on behalf of E*Trade on May 17, 2012; "Substitution of Trustee" by E*Trade replacing CTC Real Estate Services with Asset Foreclosure Services, recorded on May 17, 2012; the "Assignment of Deed of Trust" from Countrywide to E*Trade recorded in April 2012, and; the "Trustee's Deed" from Asset Foreclosure Services to Tseng Investment, LLC, recorded June 25, 2012.

After hearing argument, the trial court sustained E*Trade's demurrer without granting further leave to amend.[6] The pertinent portions of the court's order read as follows:

"Demurrer to the 1st through 4th causes of action is sustained for Plaintiff's failure to allege tender of the underlying debt. Plaintiff continues to fail to plead any facts demonstrating an exception to the tender rule. The complaint alleges no facts showing that tender would be inequitable (in a manner similar to those in the cases cited by Plaintiff's Opposition) or that the foreclosure sale was void on its face. Plaintiff contends that the sale was void because the initiating parties had no interest in the deed of trust, but those allegations are contradicted by the face of the documents. Demurrer to the 1st through 4th causes of action are sustained for additional reasons set forth below.

"Demurrer is sustained as to the 1st cause of action (wrongful foreclosure). A rebuttable presumption exists that a nonjudicial foreclosure was conducted properly; Plaintiff must allege facts which, if proven, would rebut the presumption. The complaint alleges no such facts, but instead alleges that Defendants fail to demonstrate standing to

_____

[6] One of the documents judicially noticed was the court's order sustaining with leave to amend defendants' demurrer to plaintiff's first amended complaint. The language of the order makes it clear that plaintiff's initial complaint was also the subject of a demurrer.

11

foreclose. Plaintiff argues that the foreclosure was void because Countrywide never properly assigned the deed of trust to E*Trade. The contention is based on 'information and belief' but such pleading is insufficient if it 'merely asserts the facts so alleged without alleging such information that leads the plaintiff to believe that the allegations are true.' (*Gomes v. Countrywide Home Loans, Inc*. (2011) 192 Cal.App.4th 1149, 1158-1159.)

"Demurrer is sustained as to the 2nd cause of action (cancel trustee's sale). Plaintiff's Opposition does not address the demurrer arguments. Plaintiff alleges two theories. First, Plaintiff alleges that Asset Foreclose lacked authority to file the Notice of Default, because E*Trade itself had no interest in the loan. The pleading sets forth no facts to support the 'information and belief' on which that contention rests. Second, Plaintiff's allege that Asset Foreclosure was never the Trustee, and had no right to conduct a trustee's sale, because it was substituted as trustee under the authority of E*Trade, which was never a beneficiary under the Deed of Trust. The allegation fails for lack of facts showing that E*Trade was not properly assigned the Deed of Trust. [¶] . . .[¶]

"Demurrer is sustained as to the 5th cause of action. A necessary element of concealment is a duty to disclose. The Complaint does not allege any facts giving rise to a duty to disclose (e.g., a fiduciary or confidential relationship). The few allegations of affirmative misrepresentations are pleaded only generally, which is insufficient for pleading fraud.

"Demurrer is sustained as to the 7th cause of action (unfair business practice). Plaintiff's loss of the home cannot be attributed to an alleged failed Assignment of Deed of Trust to E*Trade, and all the subsequent acts that sprang from the Assignment. Thus, the complaint fails to allege causation. Plaintiff defaulted on the loan, which means that even if the 'correct' parties had foreclosed ( i.e., that all the foreclosure documents were properly drawn) and all Deed of Trust was duly assigned, Plaintiff still would have suffered the same loss of the home. The Complaint does not allege how any failed assignments caused damage. Accordingly, there is not injury-in-fact that gives Plaintiff

12

the standing to sue under Section 17200. Further, no injury to the competitive marketplace is alleged, and thus no 17200 claim stated."

## REVIEW

### Standard Of Review

"Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded allegations in plaintiff's . . . amended complaint. ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' [Citation.] ' "[A] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." [Citation.]' [Citations.]" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) " 'However, we . . . may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken.' " (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 734; *Total Call Internat., Inc. v. Peerless Ins. Co*. (2010) 181 Cal.App.4th 161, 166.)

"While the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review on appeal, the granting of leave to amend involves an exercise of the trial court's discretion. [Citations.] When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment. [Citations.] A trial court abuses its discretion if it sustains a demurrer without leave to amend when the plaintiff shows a reasonable possibility to cure any defect by amendment. [Citations.] If the plaintiff cannot show an abuse of discretion, the trial court's order sustaining the demurrer without leave to amend must be affirmed. [Citation.]" (*Trader Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43-44.)

The plaintiff's "burden of demonstrating a reasonable possibility to cure any defect" is not pro forma. " 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of the pleading." [Citation.] . . . The plaintiff must clearly and specifically set forth . . . factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary.' " (*Rossberg*, *supra*, 219 Cal.App.4th 1481, 1491, quoting *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.)

**The Legal And Statutory Framework**

" 'The financing or refinancing of real property in California is generally accomplished by the use of a deed of trust.' [Citation.] 'A deed of trust . . . conveys title to real property from the trustor-debtor to a third party trustee to secure the payment of a debt owed to the beneficiary-creditor under a promissory note. [Citations.] The customary provisions of a valid deed of trust include a power of sale clause, which empowers the beneficiary-creditor to [foreclose] on the real property security if the trustor-debtor fails to pay back the debt owed under the promissory note. [Citations.]' [Citation.]

" '[A]lthough the deed of trust technically conveys title to the real property from the trustor-debtor to the trustee, the extent of the trustee's interest in the property is limited to what is necessary to enforce the operative provisions of the deed of trust.' [Citation.] Generally, a deed of trust requires the trustee only to perform one of two 'mutually exclusive duties: (1) should the trustor-debtor default on the debt, the trustee must initiate foreclosure on the property for the benefit of the beneficiary-creditor; or (2) should the trustor-debtor satisfy the secured debt, the trustee must reconvey title to the real property back to the trustor-debtor, extinguishing the security device.' [Citation.] Despite the security interest the deed of trust creates, 'the trustor-debtor retains all incidents of ownership with regard to the real property, including the rights of possession and sale.' [Citation.]

14

"When a trustor-debtor defaults 'on a debt secured by a deed of trust, the beneficiary-creditor may elect to judicially or nonjudicially foreclose on the real property security. [Civil Code] Sections 2924 through 2924k set forth a 'comprehensive framework for the regulation of a *nonjudicial* foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.]" [Citation.] 'To initiate the nonjudicial foreclosure process, the "trustee, mortgagee, or beneficiary, or any of their authorized agents," must record a notice of default and election to sell. [Citation.]' [Citation.] The 'mortgagee, trustee, or other person authorized to take the sale' must then wait three months before proceeding with the sale. ([Civ. Code] § 2924, subd. (a)(3); [citation].) 'After the three-month period has elapsed, a notice of sale must be published, posted, recorded and mailed 20 days before the foreclosure sale.' The property must be sold at a public auction to the highest bidder, but before the sale occurs the statutory scheme provides the trustor-debtor with several opportunities to cure the default and avoid losing the property. [Citation.]

"The statutory scheme authorizing nonjudicial foreclosures ' " 'cover[s] every aspect of [the] exercise of [a] power of sale contained in a deed of trust.' [Citation.] . . ." [Citation.]' [Citation.]" (*Rossberg*, *supra*, 219 Cal.App.4th 1481, 1491-1492, quoting *Jenkins*, *supra*, 216 Cal.App.4th 497, 507-509.) " 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the nonjudicial foreclosure statute.' " (*Gomes*, *supra*, 192 Cal.App.4th 1149, 1154.)

**Plaintiff's Wrongful Foreclosure Cause of Action**

The core of plaintiff's position is that the only valid relationship was between her and Countrywide, the original lender. As plaintiff puts it in her opening brief: "When Countrywide dissolved, [plaintiff's] obligations on the loan were canceled because Countrywide did not grant, assign, or transfer any beneficial interests in the Note or the Deed to any other defendant or third party prior to dissolving . . . . From this point on, [plaintiff's] obligation under the loan was canceled." A further ground for absolving plaintiff and extinguishing her debt was (again quoting from her opening brief) the fact that "Countrywide was paid off by Fannie Mae." The clear implication is that, if plaintiff

15

owes anything to anybody, she would owe it to Fannie Mae, which has never been a party to these proceedings. We do not agree with plaintiff's reasoning.

"To . . . maintain a wrongful foreclosure claim, a plaintiff must allege that (1) defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or was excused from tendering. [Citation.] Recognized exceptions to the tender rule include when: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred. [Citations.]" (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062.)

" 'The doctrine of tender has been correctly summarized in this fashion: "The rules which govern tenders are strict and are strictly applied, and where the rules are prescribed by statute or rules of court, the tender must be in such form as to comply therewith. The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." ' [Citations.] . . . [¶] . . . [W]ith respect to payment, 'the trustor must pay the debt . . . according to its terms to protect the property from loss by foreclosure.' [Citation.]" (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439.)

Obviously, plaintiff sees defendants as having acted fraudulently, and sees herself as the victim of oppression; her cause of action for fraud and the accompanying claim for punitive damages attest to that. But the undeniable import of her allegations is that she was in default of her obligations to Countrywide under the promissory note once she voluntarily stopped making payments on the note in August 2008. In other words, she was in default before defendants came on the scene. The sale or resale of the obligation, whether bundled into what plaintiff termed a "securitized trust," or, more likely, a loan

16

pool,[7] is not irrefutable proof of forged documents employed as tools of a nefarious conspiracy. Under California law, "the relevant parties to such a transaction [are] the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note. 'Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor.' . . . As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions. [Citation.] [¶] Furthermore, even if any subsequent transfers of the promissory note were invalid, [plaintiff] is not the victim of such invalid transfers because her obligations under the note remained unchanged." (*Jenkins*, *supra*, 216 Cal.App.4th 497, 515, quoting *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507; accord, *Mendoza v. JP Morgan Chase Bank, N.A.* (2014) 228 Cal.App.4th 1020, 1031, 1033.)

Indeed, the deed of trust that plaintiff signed expressly informed her that "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower." Thus, plaintiff's obligations under the note were not, as plaintiff alleged, "canceled," simply because the promissory note was transferred without her knowledge or consent. That possibility inheres in the

---

[7] "Ownership of mortgage loans has changed dramatically since the era of loan securitization began in the early 1960s. A significant portion of loans originated by financial institutions have been packaged and sold off onto loan pools held by tax-favored investment vehicles called 'real estate mortgage investment conduits' (REMICs). REMICs are passive title-holding entities that sell to investors interests in the loan pool commonly known as mortgage-backed securities. Each loan pool serves as collateral for repayment of amounts payable to investors on account of the securities issued by the owner of that pool. The rights and obligations of the agents who service the loan pools are governed by contracts called 'pooling and servicing agreements.' Typically there is an administrative or master servicer who collects payments from borrowers, administers the loans, and remits . . . payments to investors." (Bernhardt et al., Cal. Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2015) § 10.7A, p. 10-32.)

MERS system.  (See fn. 2, *ante*.)  Securitization of the loan would not deprive plaintiff of any legally recognizable interest in the note.  Any impropriety in the transfer of the promissory note would affect only the parties to the transfer, particularly Fannie Mae, which plaintiff alleged was the transferee purchaser of the obligation, not plaintiff.

The deed of trust also recited:  "Borrower understands and agrees that MERS holds only legal title to the interests granted by borrower in this Security Instrument, but, if necessary . . . , MERS (as the nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument."  That right and power includes the authority to substitute a new trustee and assign the deed of trust prior to commencing foreclosure proceedings.  (See *Gomes*, *supra*, 192 Cal.App.4th 1149, 1157 ["As stated in the deed of trust, Gomes agreed by executing that document that MERS has the authority to initiate a foreclosure"]; *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334 ["The beneficiary may make a substitution of trustee . . . to conduct the foreclosure and sale"].)  That authority existed without regard to whether it was known to plaintiff.  (See *Herrera v. Federal National Mortgage Assn., supra,* 205 Cal.App.4th 1495, 1510 ["Nothing in the comprehensive statutory scheme governing nonjudicial foreclosures . . . contains a requirement that [assignment of a deed of trust] must be acknowledged and recorded before the foreclosure sale"]; *Haynes v. EMC Mortgage Corp*. (2012) 205 Cal.App.4th 329, 336 ["where a deed of trust is involved, the trustee may initiate foreclosure irrespective of whether an assignment of the beneficial interest is recorded"].)  Plaintiff's conclusory allegations are insufficient to overcome the presumptions favoring the validity of MERS's authority and the conformity of its actions to that authority and the statutory foreclosure scheme.  (See *Fontenot v. Wells Fargo Bank, N.A*., *supra*, 198 Cal.App.4th 256, 269-272.)

Thus, plaintiff's cause of action for wrongful foreclosure is premised on allegations that are contrary to established law concerning MERS and the foreclosure process.  For this reason, those allegations do not come within the ordinary presumption

of the validity of factual allegations, and are to be disregarded.  (*Das v. Bank of America, N.A.*, *supra*, 186 Cal.App.4th 727, 734; *Total Call Internat., Inc. v. Peerless Ins. Co.*, *supra*, 181 Cal.App.4th 161, 166.)  Moreover, because plaintiff alleged no basis for the invalidity of the underlying debt or the foreclosure proceedings, there was—as the trial court correctly concluded—no basis for excusing her from the tender requirement.  (*Nguyen v. Calhoun*, *supra*, 105 Cal.App.4th 428, 439.)  It is true that an exception excuses tender where the validity of the underlying debt is questioned.  (See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112-113 and authorities cited.)  But while plaintiff alleged irregularities in the assignment of the deed of trust and substitution of the trustee invalidated the foreclosure sale, her complaint has no allegations that her loan with Countrywide was void at the time it was made.

### Plaintiff's Cause Of Action For Fraud

" ' "The elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity . . . ; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' "  (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173, quoting *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  " 'In California, fraud must be pled specifically; general and conclusory allegations do not suffice.  [Citations.]  "Thus, ' "the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect." '  [Citation.]  This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.' " ' "  (*Small v. Fritz Companies, Inc., supra,* at p. 184, quoting *Lazar v. Superior Court, supra,* p. 645.)  "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent misrepresentations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157.)

None of these principles has much application here, because defendants are strangers to plaintiff's fraud claim.  The allegedly deceitful allegations were made by

19

Countrywide and Bank of America.  As already shown, the following are the only allegations directed at defendants:

"E*Trade, willfully, with intent, in concert with the other Defendants, refuses to deny that the Plaintiff's debt has been canceled and that Plaintiff does not owe any money to anyone.  Instead, E*Trade continued to represent that Plaintiff owes money to E*Trade, and that E*Trade was a Beneficiary entitled to foreclose the property. E*Trade had the duty to disclose the current status of the loan and whether any sale of the interest on the loan occurred and provide sufficient notice under the terms of the Note and Deed. E*Trade failed to disclose and concealed information about Plaintiff's obligation under the Note and E*Trade's standing to initiate a foreclosure, which injured the Plaintiff."

"Each and every Defendant knew that their actions were wrong and intended to mislead the Plaintiff.  As described herein, their deception was essential to their overall plan for unjust enrichment through the wrongful foreclosure of the property.  Defendants stood to receive an unjust enrichment without having any interest in the property.

"To this day, Defendants are under the false belief that they own the loan, which was sold in the secondary market years ago without the proper assignments of interest."

As shown above, these allegations need not be taken at face value because they are based upon erroneous premises and interpretations of law concerning the foreclosure process.  (*Das v. Bank of America, N.A.*, *supra*, 186 Cal.App.4th 727, 734; *Total Call Internat., Inc. v. Peerless Ins. Co.*, *supra*, 181 Cal.App.4th 161, 166.)  In terms of the pure requirements for pleading, it is not at all clear that defendants made any affirmative statements, but simply declined to agree with plaintiff's erroneous legal conclusions ("E*Trade . . . refuses to deny").  In addition, there are no allegations of justifiable reliance by plaintiff, only that "Each and every Defendant . . . intended to mislead" her. And, as already established, because the foreclosure was not wrongful, plaintiff cannot allege that she suffered legally compensable damage.

### Plaintiff's Cause Of Action For Violation Of The UCL

Section 17200 of the Business and Professions Code defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) . . . ." Section 17500 in turn prohibits "any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property" from making or disseminating "any statement concerning that real or personal property . . . which is untrue or misleading . . . ." Relief under these provisions is generally limited to injunctive relief and restitution. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 371 [statutory remedies "are narrow in scope," " 'generally limited to injunctive relief and restitution,' " and do not include compensatory damages or attorney fees].) Plaintiff did seek injunctive relief, and it has already been shown that he has no claim for restitution. But civil penalties of $2,500 "for each violation" are statutorily mandated. (Bus. & Profs. Code, §§ 17206, subd. (a), 17536, subd. (a).) These plaintiff did seek. But plaintiff did not allege a valid claim to recover these penalties.         In *Jenkins*, *supra*, 216 Cal.App.4th 497, the plaintiff alleged that the defendants violated section 17200 by recording fraudulent documents in violation of Penal Code section 115.5 and the nonjudicial foreclosure statutes (Civ. Code, § 2924 et seq.). As a result of these unlawful, unfair, and fraudulent business practices, the plaintiff alleged that her home was subject to foreclosure and that she had suffered monetary damages. The Court of Appeal concluded that the plaintiff could not satisfy the causation element which required her to plead a causal link between her economic injury (the impending nonjudicial foreclosure) and the allegedly unfair or unlawful acts. The plaintiff admitted that she had defaulted on her loan and that this default triggered the lawful enforcement of the power of sale clause in the deed of trust, which subjected the house to nonjudicial foreclosure. (*Jenkins*, *supra*, at p. 522–523.) The court reasoned that the plaintiff could not assert that the impending foreclosure was caused by the defendants' wrongful actions, and therefore a demurrer to the cause of action was proper. (*Id*. at p. 523.) The *Jenkins* court concluded that amendment could not cure the causation defect because the purported wrongdoing by the defendants occurred after the plaintiff defaulted on her loan. (*Id.* at pp. 523–524.)

We conclude that our case is like *Jenkins, supra,* 216 Cal.App.4th 497. Plaintiff cannot satisfy the causation element because she defaulted on the loan which triggered the nonjudicial foreclosure before any alleged wrongdoing by the Bank.

**Plaintiff Is Not Entitled To An Opportunity To Amend**

Plaintiff states at the end of her opening brief: "Appellant can amend her SAC [second amended complaint] to allege that Appellant does not owe any money on the loan. Appellant can also amend to make it clear that she is disputing the validity of the debt against Respondents. Appellant can amend her SAC to clearly allege that she was damaged and is excused from the Tender requirement. With these amendments, Appellant can establish her claims against the Respondents." These boilerplate representations are inadequate to establish a reasonable probability that plaintiff can cure the defects of her complaint. (*Rossberg*, *supra*, 219 Cal.App.4th 1481, 1491; *Trader Sports, Inc. v. City of San Leandro*, *supra*, 93 Cal.App.4th 37, 44.)

**DISPOSITION**

The judgment of dismissal is affirmed.

22

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.