Filed 10/13/15  Millari v. JP Morgan Chase Bank, N.A. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HONORIO R. MILLARI,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>        Defendant and Respondent. | A142272<br><br>(San Mateo County<br>Super. Ct. No. CIV518086) |

Appellant Honorio Millari appeals from the judgment entered following the sustaining without leave to amend of the demurrer to his second amended complaint, a complaint filed in the fourth separate action brought by Millari.  Millari's appellate briefs do not address any of the 10 causes of action he attempted to allege in the three complaints in this action, contenting himself with this one argument:  the demurrer "was sustained without lawful and valid evidence that respondents are the lawful beneficiary of the original lender."  We affirm.

## BACKGROUND

In April 2005, Millari obtained a $566,400 loan from Advantage Home Finance (AHF).  The note was secured by a deed of trust encumbering the property at 400 Edna Lane, Pacifica (the property).  The trustee on the deed of trust was Alliance Title Company (Alliance), which recorded the deed of trust in the official records of San Mateo County on April 22, 2005.  The note and deed of trust were among the exhibits attached to Millari's complaint, and as pertinent here, the deed of trust provided as follows:  "24.  Substitute Trustee.  Lender, at its option, may from time to time appoint a

1

successor trustee to any Trustee appointed hereunder . . . . Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable law."

Sometime in 2008, Millari defaulted on his loan, a fact he admits. In November 2008, California Reconveyance Company (CRC), successor trustee, recorded a notice of default and election to sell (notice of default), which stated that Millari was over $53,000 in arrears as of November 21, 2008. Thereafter, CRC recorded six notices of trustee's sale between April 2009 and January 2013. Meanwhile, beginning in January 2011, Millari filed three predecessor actions to this case, actions described in Millari's own words as follows:

"10. Pro se Plaintiff filed a verified complaint for Money Damages and Civil RICO against JP MORGAN and others in the U.S. District Court for the Northern District of California on January 20, 2011 under Case No. CV-11 02950 SI . . . . In an order filed on April 18, 2011, the Court granted plaintiff an extension of time until May 20, 2011, to file an amended complaint. Because the Plaintiff was not able to file an amended complaint, . . . the court dismissed the case without prejudice for failure to prosecute on July 8, 2011.

"11. On August 8, 2011, pro per Plaintiff filed a civil complaint against JP MORGAN and others with the Superior Court of California, County of San Mateo under Case No. CIV 507511. . . . On October 7, 2011, Defendants filed a . . . demurrer . . . . The hearing regarding the demurrer to Plaintiff's complaint was scheduled on February 1, 2012. Plaintiff filed a request to reschedule the hearing so a legal counsel may properly represent Plaintiff . . . . The Court rescheduled the hearing but the Plaintiff was unable to retain his attorney in time to meet the deadlines set by the Court. On April 24, 2012, Plaintiff voluntarily dismissed his case without prejudice.

"12. On June 4, 2012, with the belief that the Federal Court has jurisdiction because the amount in controversy exceeds $75,000 with the diversity among the parties to this case and certain violations of the Real Estate Settlement Procedures Act (RESPA), 12 USC § 2601 et seq., Plaintiff's counsel filed a complaint to quite [sic] title, for

2

declaratory and injunctive relief, cancellation of instruments, fraud and unjust enrichment against Defendants JP MORGAN et al. with the U.S. District Court for Northern District of California under Case No. 12-28760SC. Without addressing the merits of the action, the Court dismissed the case without prejudice for lack of subject matter jurisdiction on October 3, 2012."

On November 19, 2012, again represented by counsel, Millari filed his complaint in this action, naming four defendants: JP Morgan Chase Bank (Chase), CRC, AHF, and Alliance. The complaint alleged six causes of action, styled as follows: (1) quiet title; (2) declaratory relief; (3) injunction; (4) cancellation of instruments; (5) fraud; and (6) unjust enrichment.

On March 7, 2013, Chase and CRC filed a demurrer to all causes of action, accompanied by a request for judicial notice, seeking judicial notice of 11 documents from the County of San Mateo Recorder's Office.

On June 20, 2013, before the hearing on the demurrer, Millari filed a first amended complaint (FAC). The FAC eliminated two originally named defendants, AHF and Alliance, and added a new named defendant, identified by Millari as: "Deutsche Bank National Trust Company as Trustee for the Long Beach Mortgage Loan Trust 2005-WL2, Asset-Backed Certificates, Series 2005-WL2" (Deutsche Bank). The FAC asserted 10 causes of action: (1) wrongful foreclosure; (2) quiet title; (3) slander of title; (4) fraud; (5) cancellation of instruments; (6) violation of Civil Code section 2924.17; (7) violation of Civil Code section 2934, subdivision (a)(1)(A); (8) violation of Business and Professions Code section 17200, et seq. (section 17200); (9) negligence; and (10) unjust enrichment.

The three named defendants filed a demurrer on July 23, 2013, set for hearing on October 8. Millari failed to timely oppose the demurrer, and defendants filed a reply brief noting that non-opposition. Millari filed a belated opposition on October 3, to which defendants filed a supplemental reply on October 4.

The demurrer to the FAC came on for hearing as scheduled, prior to which the court had issued a tentative ruling. Following a brief hearing, the court filed its order

3

adopting the tentative ruling, which sustained without leave to amend the demurrer as to seven of the 10 causes of action: the second (quiet title), third (slander of title), fourth (fraud), fifth (cancellation of instruments), sixth (violation of Civil Code section 2924.17), ninth (negligence), and tenth (unjust enrichment). The court granted Millari leave to amend as to the first (wrongful foreclosure), seventh (violation of Civil Code section 2934, subdivision (a)(1)(A)), and eighth (violation of Business and Professions Code section 17200) causes of action.

On January 8, 2014, Millari filed a second amended complaint (SAC) which purported to allege four causes of action, for: (1) wrongful foreclosure; (2) constructive fraud; (3) violation of Civil Code section 2924.17 and violation of Civil Code section 2934, subdivision (a)(1)(A)[1]; and (4) violation of Business and Professions Code section 17200.

On February 7, 2014, defendants filed a demurrer to the SAC, along with another request for judicial notice. The request again sought notice of the 11 documents from the recorder's file which, among other things, showed the following:

-- Millari obtained a residential loan in the amount of $566,400.00 secured by a deed of trust encumbering the property, which was recorded on April 22, 2005 with the San Mateo County Recorder's Office. The deed of trust identifies AHF as the lender, Millari as the borrower, and Alliance as the trustee.

-- On September 25, 2008, the Federal Deposit Insurance Corporation and Chase entered into a purchase and assumption agreement in which Chase acquired all "servicing rights and obligations" of Washington Mutual Bank.

-- On November 24, 2008, CRC recorded an assignment of the deed of trust, by which Chase assigned the deed of trust to Deutsche Bank, as trustee for Long Beach Mortgage Loan Trust 2005-WL2.

---

[1] The SAC contained two sections labeled as the "third" cause of action, the first labeled "Count III: Violation of Cal. Civ. Code Section 2924.17" and the second labeled "Count III: Violation of Cal. Civ. Code Section 2934(a)(1)(A)."

4

-- On November 24, 2008, Deutsche Bank recorded a substitution of trustee naming CRC as trustee under the deed of trust.

-- On November 24, 2008, CRC recorded a notice of default and election to sell the property in the San Mateo County Recorder's Office.

-- Between April 2009 and January 2013, CRC recorded six separate notices of trustee's sale with the San Mateo County Recorder's Office.

On February 11, 2014, defendants also filed a motion to strike the allegations relating to the second (constructive fraud) and third (Civil Code section 2924.17) causes of action in the SAC on the ground that the court had previously sustained their demurrer to these causes of action without leave to amend.

The demurrer and motion to strike came on as scheduled, on March 26, 2014, again against the background of the court having issued a tentative ruling. The hearing was brief, and included Millari's counsel saying that "[w]e accept the court's tentative ruling with the exception of the first cause of action, the wrongful foreclosure cause of action." Millari's counsel went on as follows:

"The court's basis for the ruling was that it was the *Fontenot* case. And we believe that *Fontenot* is not applicable in this case, it was totally dissimilar, the facts are not the same as in this case, and that the *Glaski versus Bank of America* case should be adopted.

"The plaintiffs here want to pay the real party in interest, and they are not sure exactly who to pay. The defendant has never shown the documents that they are entitled to be paid. So *Fontenot* is not applicable.

"Also, the defendants have contended that plaintiff may not assert a claim for wrongful foreclosure because a sale has not occurred. But the cases that are cited are inapplicable in this case and that the borrower does have the right to bring a wrongful foreclosure action against the ledger for no foreclosure sale has taken place when the borrower has articulated the specific factual basis for challenging the authority to foreclose.

5

"So we would ask the court to look at the—I can cite some of the cases if you would like.

"THE COURT:   No.  I am familiar with the cases, but thank you for that."

Counsel for defendants argued briefly, concluding as follows:

"[P]laintiff cites *Glaski*, and it's worth noting that plaintiff's arguments on *Glaski* in his second amended complaint was within the cause of action for fraud which was subject to our motion to strike and was previously dismissed by the court on our last amended complaint.

"Furthermore, *Glaski* is not the appropriate case here, and we cited numerous cases which refute the holding in *Glaski*, and it's really not applicable here.

"*Fontenot*, *Silga*, *Herrera*, and *Dick versus American Home Mortgage*, those cases all show that a wrongful foreclosure case cannot stand when the plaintiff has not alleged prejudice.  And he has not done so, and this is his third chance at articulating a claim.

"So it would be our position that not only should a demurrer be granted but plaintiff should not be given any other chance to amend the pleading.  He has had numerous chances.

"The second amended complaint ignores the previous orders of this court and also ignores an argument that was raised in our previous demurrers and our reply briefs and in our current demurrer to the second amended complaint."

The court concluded as follows:

"I have consistently found that the *Glaski* case—and the cite for that is *Glaski versus Bank of America*, 218 Cal.App.4th 1079, a 2013 California Court of Appeal case—is not rationale that I have followed in handling these types of issues nor have the majority of courts in California.  It is a minority opinion.  It has been roundly rejected by a majority of courts in this state.

"I found more persuasive *Jenkins versus JP Morgan Chase Bank*, 216 Cal.App.4th 497, another 2013 case, as well as the arguments set forth in defendant's motion.

"So the tentative is adopted.

"And the moving party shall submit an order to the court for signature."

6

A comprehensive formal order was thereafter filed that analyzed the remaining counts that had not earlier been dismissed, which order read in pertinent part as follows:

"Demurrer is sustained without leave to amend as to Count I (wrongful foreclosure) and the second Count III (violation of Civil Code section 2934). Plaintiff fails to allege any prejudice in that the complaint still does not allege that the transfer of the Deed of Trust and Subject Loan interfered in any manner with his ability to pay the note. (*Fontenot v. Wells Fargo Bank* (2011) 198 CalApp4th 256, 272.) The amendments to Count I do not cure the defect (*See* 2nd. Am. Comp. ¶ 84-86). Count III is unchanged from the previous deficient pleading. As such, the same reasoning underlying the sustaining of the initial demurrer applies equally here, as nothing significantly has been added to the FAC which cures the defects addressed in the Court's ruling of October 8, 2013[.]

"Demurrer is sustained without leave to amend as to Count IV, Business & Professions Code Section 17200. The claim under Business and Professions Code still fails to allege standing in the form of any economic injury-in-fact. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228; *Kwikset Corp. v. Super. Ct.* (2011) 51 Cal.4th 310, 322.) To date, no foreclosure sale has occurred, and Plaintiff is still in possession of the property. Moreover, no unfair practice is sufficiently alleged."

The order also granted the motion to strike Count II (constructive fraud) and the first Count III (violation of Civil Code section 2923.17), noting as follows: "The Court sustained demurrer to both causes of action without leave to amend. Both counts are improper in the present amended pleading."

Judgment of dismissal followed, from which Millari filed a notice of appeal.

### DISCUSSION

**The Standard of Review**

"Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded allegations in plaintiff's . . . amended complaint. ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider

7

matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' [Citation.] ' "[A] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." [Citation.]' [Citations.]" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) " 'However, we . . . may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken.' " (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 734; *Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 166.)

"While the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review on appeal, the granting of leave to amend involves an exercise of the trial court's discretion. [Citations.] When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment. [Citations.] A trial court abuses its discretion if it sustains a demurrer without leave to amend when the plaintiff shows a reasonable possibility to cure any defect by amendment. [Citations.] If the plaintiff cannot show an abuse of discretion, the trial court's order sustaining the demurrer without leave to amend must be affirmed. [Citation.]" (*Traders Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43–44.)

Millari's plaintiff's "burden of demonstrating a reasonable possibility to cure any defect" is not pro forma. " 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] . . . The plaintiff must clearly and specifically set forth . . . factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary.' " (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491 (*Rossberg*), quoting *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.)

8

**The Legal and Statutory Framework**

" 'The financing or refinancing of real property in California is generally accomplished by the use of a deed of trust.' [Citation.] 'A deed of trust . . . conveys title to real property from the trustor-debtor to a third party trustee to secure the payment of a debt owed to the beneficiary-creditor under a promissory note. [Citations.] The customary provisions of a valid deed of trust include a power of sale clause, which empowers the beneficiary-creditor to [foreclose] on the real property security if the trustor-debtor fails to pay back the debt owed under the promissory note. [Citations.]' [Citation.] [¶] . . .

"When a trustor-debtor defaults 'on a debt secured by a deed of trust, the beneficiary-creditor may elect to judicially or nonjudicially foreclose on the real property security. . . . 'To initiate the nonjudicial foreclosure process, the "trustee, mortgagee, or beneficiary, or any of their authorized agents," must record a notice of default and election to sell. [Citation.]' [Citation.] The 'mortgagee, trustee, or other person authorized to take the sale' must then wait three months before proceeding with the sale. ([Civ. Code] § 2924, subd. (a)(3); [Citation].) 'After the three-month period has elapsed, a notice of sale must be published, posted, recorded and mailed 20 days before the foreclosure sale.' [Citation.] The property must be sold at a public auction to the highest bidder, but before the sale occurs the statutory scheme provides the trustor-debtor with several opportunities to cure the default and avoid losing the property. [Citation.]

"The statutory scheme authorizing nonjudicial foreclosures ' " 'cover[s] every aspect of [the] exercise of [a] power of sale contained in a deed of trust.' [Citation.] . . ." [Citation.]' [Citation.]" (*Rossberg, supra,* 219 Cal.App.4th 1481, 1491–1492, quoting *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507–509 (*Jenkins*).) " 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*).)

*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75 (*Siliga*) synthesized much of this, as follows:

9

" 'California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924 through 2924k, which "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 (*Moeller*).) "These provisions cover every aspect of exercise of the power of sale contained in a deed of trust." (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285.) "The purposes of this comprehensive scheme are threefold:  (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller*, at p. 830.) . . .

"California courts have refused to allow trustors to delay the nonjudicial foreclosure process by pursuing preemptive judicial actions challenging the authority of a foreclosing 'beneficiary' or beneficiary's 'agent.' (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511 (*Jenkins*); *Gomes, supra,* 192 Cal.App.4th at pp. 1154–1156 & fn. 5.)  Such an action is 'preemptive' if the plaintiff alleges no 'specific factual basis' for the claim that the foreclosure was not initiated by the correct person. (*Jenkins, supra,* at p. 512, italics omitted.)  A preemptive suit does not seek a remedy for specified misconduct in the nonjudicial foreclosure process, which may provide a basis for a valid cause of action.  Instead, a preemptive suit seeks to create an additional requirement for the foreclosing party, apart from the comprehensive statutory requirements, by requiring the foreclosing party to demonstrate in court that it is authorized to initiate a foreclosure.  (*Ibid.*)  '[A]llowing a trustor-debtor to pursue such an action, absent a "*specific factual basis* for alleging that the foreclosure was not initiated by the correct party" would unnecessarily "interject the courts into [the] comprehensive nonjudicial scheme" created by the Legislature, and "would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy. [Citation.]" '  (*Id.* at p. 512.)"  (*Siliga, supra,* 219 Cal.App.4th at pp. 82–83.)

10

**Summary Of Millari's Position**

Millari's position here essentially ignores all the above, to the point that he does not even mention *Siliga* in his reply brief, despite its being cited three times by respondents. Rather, Millari makes what might be called an all-out assault on the process itself, his opening brief, as noted, containing only one argument. That one argument has seven sub-arguments, Millari's table of contents reading as follows:

"A. Respondents' Demurrer Was Sustained Without Lawful and Valid Evidence That Respondents Are the Lawful Beneficiary of the Original Lender . . .

"1. Statement [*sic*] of Review . . .

"2. Respondents [*sic*] Analysis Of Gomes Is Fatally Flawed . . .

"3. Respondents [*sic*] Arguments Fail As a Matter of Law . . .

"4. Leave To Amend Should be Liberally Granted . . .

"5. Appellant Can Seek Cancellation of Trustee's Deed . . .

"6. Jenkins is Not Relevant In These Matters . . .

"7. The Trial Court's Preliminary Injunction Ruling Was Erroneous . . . ."

Millari's attack on the process must fail, as several cases have held, illustrated by *Jenkins, supra,* 216 Cal.App.4th at pp. 511–512, which succinctly put it this way:

"California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure. (See *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440–442 (*Debrunner*); *Gomes, supra,* 192 Cal.App.4th at pp. 1154–1157.) In *Gomes*, our colleagues in Division One considered whether California's nonjudicial foreclosure statutes allow a defaulting trustor-debtor, before his or her property is sold, to bring a preemptive judicial action to challenge whether the person initiating the foreclosure is, or is duly authorized to do so by, the person who possesses a secured interest in the property. (*Gomes, supra,* 192 Cal.App.4th at p. 1152.) Much like Jenkins's first cause of action, the appellant in *Gomes* alleged, 'on information and belief,' the entity that initiated the nonjudicial foreclosure process did not have the

11

authority to do so because (1) the entity was not the owner of the promissory note that was secured by the deed of trust and (2) the entity was not an authorized agent of the owner of the promissory note. (*Ibid.*)

"In the *Gomes* court's analysis of the validity of the appellant's claim, it made the important point that such a preemptive action does not seek a remedy for a foreclosing party's misconduct with regards to the initiation and processing of the nonjudicial foreclosure, which, as we noted above, may serve as the basis for a valid cause of action. (*Gomes, supra,* 192 Cal.App.4th at p. 1154, fn. 5.) Instead, the *Gomes* court found that such a preemptive action seeks to create 'the additional requirement' that the foreclosing entity must 'demonstrate *in court* that it is authorized to initiate a foreclosure' before the foreclosure can proceed. (*Ibid.*, italics added.) After examining the nonjudicial foreclosure statutes and considering the well-established purposes of nonjudicial foreclosure, the *Gomes* court found no express or implied grounds for allowing such a preemptive action. (*Id.* at p. 1156.) Consequently, the *Gomes* court concluded that allowing a trustor-debtor to pursue such an action, absent a '*specific factual basis* for alleging that the foreclosure was not initiated by the correct party' would unnecessarily 'interject the courts into [the] comprehensive nonjudicial scheme' created by the Legislature, and 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy. [Citation.]' (*Id.* at pp. 1154–1156 & fn. 5.)"

Despite his sub-argument headings, Millari devotes little effort to distinguish *Jenkins* or *Gomes*. This is all he says about *Jenkins*: "*Jenkins v JP Morgan Chase Bank*, 216 Cal.App.4th 497 is clearly off point in this matter. *Jenkins* states in pertinent part: [¶] [']The court offered several reasons for its ruling. It explained Jenkins failed to state a basis for declaratory relief because: (1) production of the note is not required to perfect foreclosure; (2) Jenkins was not a party or a third party beneficiary to the securitized investment trust's pooling and servicing agreement; and (3) California does not recognize a preemptive suit challenging a foreclosing party's right or ability to foreclose.['] [¶] Appellant never required the Respondents to 'produce the note.' Respondents chose to

create arguments in their boilerplate Demurrer that support case law that favors Respondents' position which was never alleged in the Complaint."

And this is all he says about *Gomes*: "*Gomes* . . . supports non-judicial foreclosure but does NOT speak to ownership of the mortgage. Nor does *Gomes* support the contention that any entity can foreclose without lawful or valid assignments."

As indicated, Millari makes no effort to justify any of the specific causes of action he attempted to allege, not even mentioning the requisite elements of the claims, much less how the allegations in the SAC measured up. Notwithstanding this, defendants understandably covered all bases, and spent 12 pages addressing the SAC cause of action by cause of action, obviously at significant expense. Millari's ten-page reply brief ignores the claims as well, continuing what can only be described as his attack on the very process. This is how the introduction in Millari's reply brief puts it:

"Respondents claim there was a default, prove no supporting evidence of same and after benefiting from the securitization of Appellants home, then seek to take Appellant's home so they can do the same process to yet another homeowner. Appellant purchased his home, in good faith. Respondents made profits from the admitted securitization process. In their greed, they failed to ensure that Appellant's chain of title was not broken, that Appellant was ALWAYS AWARE of who was entitled to payment of his mortgage and ensured regular invoicing was provided to Appellant. Instead, there was NO billing for several years, the REAL party in interest was never revealed and suddenly in 2008 Respondents magically appear and demand payment. [¶] Respondents [*sic*] Opening Brief fail [*sic*] to show, address or otherwise produce evidence that any Respondent is entitled to take default and that Appellant has any obligation to these Respondents . . . . Under current law, Respondents should [*sic*] how that they offered Appellant loan modification options which Appellant refused to satisfy. While Marks [*sic*] has been out lawyered by counsel in these matters, orders based upon fraud and misrepresentations are VOID. Respondents should present clear irrefutable evidence showing that Appellant refused their demands for payment for several years, and why

13

Respondents took several years to made [*sic*] demand or otherwise collect a debt it believed it was owed.

And this is Millari's conclusion: "Appellant continues to contend that the requirements of California's non-judicial foreclosure statute must be strictly enforced. *Miller v. Cote* (1982) 127 Cal.App.3d 888, 894. Respondents' failure to comply with the statute's provisions has deprived Appellant of due process of law guaranteed by Article I, Section 7 of California's Constitution. Appellant properly alleges and believes that Respondents knowingly and deliberately filed false assignments and foreclosure documents in order to unfairly and unjustly benefit themselves. Appellant alleges Respondents have acted with malicious intent to unlawfully foreclose upon Appellant. Appellant further and properly alleges that Respondents have no standing to do so."

It is utterly unavailing, not to mention that it directly ignores the trial court's proper conclusion that "Defendants had authority to initiate foreclosure proceedings"—a conclusion based on the judicially noticeable facts filed in support of defendants' demurrer.

A few of Millari's conclusory contentions have also been expressly rejected. Thus:

An argument that defendants are required to demonstrate ownership of the subject loan. (*Gomes, supra,* 192 Cal.App.4th at pp. 1155–1156.)

Challenges to the lender's authority to enforce the terms of a loan on the grounds that it has been securitized. (See, for example, *Lane v. Vitek Real Estate Industries Group.* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1099 ["The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts."]; *Bascos v. Fed. Home Loan Mortg. Corp.* (C.D. Cal. July 22, 2011, No. C 12-00108) 2011 U.S. Dist. Lexis 86248 at pp.18–19; *Hafiz v. Greenpoint Mortg. Funding, Inc.* (N.D.Cal. 2009) 652 F.Supp.2d 1039, 1043 [Courts have summarily rejected the argument that the companies [like Chase] lose "their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool."].)

14

A claim premised on an alleged violation of a pooling and servicing agreement. (See, e.g., *Sami v. Wells Fargo Bank,* (N.D.Cal. Mar. 21, 2012, No. C 12-00108 DMR) 2012 U.S. Dist. Lexis 38466 ["To the extent Plaintiff bases her claims on the theory that Wells Fargo allegedly failed to comply with the terms of the PSA, the court finds that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement."].)

In sum, Millari's position has been soundly rejected, time and again, in case after case, a reality Millari does not even acknowledge, much less confront. His conduct cannot be condoned, and his persistence in the face of it all must come to an end.

Little more need be said about the futility of Millari's position, but we do feel constrained to quote a portion of Millari's reply brief, to show just how misguided—and misplaced—his position. That quotation is his reference to, and reliance upon, *Glaski, supra,* 218 Cal.App.4th 1079—a case not even mentioned in his opening brief. What Millari says in his reply is this, quoted verbatim, all "*sics*" purposely omitted:

"**A. Respondent's Contention that California Law Does Not Permit Appellant To Bring This Preemptive Lawsuit Challenging Respondents' Authority to Foreclose is Erroneous and Fatally Flawed**

"On August 8, 2013, the California Court of Appeals, Fifth Circuit, Case No. F064556 Court set *Glaski v. Bank of America*, this ruling, confirms the arguments that Appellant has properly brought to bar. Transfer of real estate cannot be based upon fraud. This California Supreme Court decision, while widely rejected, does not make it an erroneous ruling. Many courts favor the banks, that does not make such rulings just. Many courts make precedent based upon the pleadings of inexperienced homeowners and use said rulings against homeowners. That does not make them "just". The Supreme Court held in relevant part in *Glaski*: [¶] . . . 'where a plaintiff alleges that the entity lacked authority to foreclose on the property, the foreclosure sale would be void. [Citation.]' (*Lester v. J.P. Morgan Chase Bank, supra,* ___ F.Supp.2d ___, [2013 WL 633333, p. *8].) [¶] . . . Consequently, we conclude that *Nguyen v. Calhoun, supra,* 105

15

Cal.App.4th 428 does not deprive *Glaski* of the opportunity to prove the foreclosure sale was void based on a lack of authority.[']

"What Appellant seeks here is reasonable and common sense. In order to demand payment an obligation must be owed. Clearly owed, unquestionably owed. Respondents fail to show ANY evidence that Appellant owes them a sum. Respondents fail to show evidence that Appellant REFUSED to pay them after they provided numerous invoices to Appellant and Appellant ignored said payment demands. Instead, after selling Appellant's mortgage numerous times in default swaps, and profiting 10 fold, as an afterthought Respondents claim Appellant owes them an obligation, and instead of following the law, Respondents chose unfair foreclosure.

"While California Courts refuse to follow *Glaski*, a California Supreme Court ruling, which the doctrine of stare decisis demands be followed, banks filed appeals and moved to depublish the ruling, obviously, clearly, the ruling was just and fair and offered just the tiniest bit of justice to Appellants and the homeowers who continue to battle for justice in these matter."

Millari's counsel should be ashamed of that passage, which is wrong in so many ways. Beyond that, *Glaski* involved application of New York law, has not been followed by any other California court, and indeed, has been uniformly rejected.

Lastly, we conclude that Millari is not entitled to an opportunity to amend, as he could not have cured the myriad defects in his pleading. As indicated, Millari's burden is to show how any amendment can cure the defects. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) And he cannot do it with boilerplate representations that he can cure them. (*Rossberg, supra,* 219 Cal.App.4th at p. 1491; *Traders Sports, Inc. v. City of San Leandro, supra,* 93 Cal.App.4th 37, 44.)

Not only does Millari not indicate how he could amend, when he was permitted to amend following the successful demurrer to the FAC, he submitted the SAC that was essentially identical to the FAC. In sum, permitting any amendment would have been futile. (*Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 414–415.)

16

## DISPOSITION

The judgment of dismissal is affirmed.

                            _____

                            Richman, J.

We concur:

_____

Kline, P. J.

_____

Stewart, J.